TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-96-00629-CV






Unified Loans, Inc., et al., Appellants




v.




Leslie Pettijohn, Consumer Credit Commissioner of Texas; and Texas Office of


Consumer Credit Commissioner, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT


NO. 94-12334, HONORABLE JOSEPH H. HART, JUDGE PRESIDING 






 Seven pawnshop owners appeal from a declaratory judgment sustaining the validity of rules
promulgated by the Consumer Credit Commissioner pursuant to the Texas Pawnshop Act. See Tex. Rev.
Civ. Stat. Ann. art. 5069-51.01-.19 (West 1987 & Supp. 1997). (1) We will reverse the judgment, save
in two respects, and render the judgment we believe the trial court should have rendered. Tex. R. App.
P. 43.2(c).

THE CONTROVERSY


 In September 1994, the Commissioner promulgated rules regulating pawnshop operations. 
See 7 Tex. Admin. Code §§ 85.21-.81 (1994). (2) Appellants, each a small, independent pawnshop, sued
the Commissioner for declaratory relief that the rules were invalid on various grounds. The trial court
sustained the validity of all the challenged rules save one. The appellants bring nine points of error; the
Commissioner brings a cross-appeal respecting the single rule the trial court declared invalid.


COMPLIANCE WITH APA SECTION 2001.024 



 Appellants sued for declaratory judgment that the Commissioner's rules were invalid on
several procedural and substantive grounds and interfered with appellants' legal rights or privileges, a
statutory cause of action authorized by section 2001.038 of the Administrative Procedure Act. (3) See
Administrative Procedure Act (APA), Tex. Gov't Code Ann. § 2001.038 (West 1997). Section
2001.035 of the APA condemns as invalid an agency rule not adopted in "substantial compliance" with the
rulemaking provisions set out in APA sections 2001.021-.034. In appellants' first and second points of
error, they complain the rules were not adopted in substantial compliance with APA section 2001.024, and
the trial court erred in failing to declare the rules invalid on that ground. We will sustain the points of error.


Advance Notice of Proposed Rules.

 Sections 2001.021-.033 of the APA establish a system of informal or "notice-and-comment" rulemaking. (4) Under such a system, a critical element is the published notice by which an agency
initiates the rulemaking proceeding. Section 2001.023 requires publication of the notice in the Texas
Register at least 30 days before adoption of a rule. Section 2001.024 specifies the required contents of
the notice. It must include the text and a brief explanation of the proposed rule, a statement of the authority
under which the rule is proposed to be adopted, a fiscal note regarding the effect of the proposed rule on
state and local governments, a note about public benefits and costs, a local employment-impact statement
if required by another statute, a request that interested persons comment on the proposed rule, and "any
other statement required by law." The purpose of these provisions dictating the content of the required
notice is to assure adequate notice. "If interested persons have notice, they can confront the agency's
factual suppositions and policy preconceptions through the comment process." 1 Charles H. Koch, Jr.,
Administrative Law § 4.4 at 205 (1985); see also 1 Frank E. Cooper, State Administrative Law at
185-93 (1965); Arthur Earl Bonfield, State Administrative Rule Making §§ 6.3.3, 6.3.4 (1986). 
Adequate notice is essential for fairness as well as a meaningful opportunity to comment on a proposed rule. 
See Chemical Mfrs. Ass'n v. U.S.E.P.A., 870 F .2d 177, 200 (5th Cir. 1989) ("[F]airness requires that
the agency afford interested parties an opportunity to challenge the underlying factual data relied on by the
agency."); Portland Cement Ass'n v. Ruckelshaus, 486 F.2d. 375, 393-394 (D.C. Cir. 1973), cert.
denied, 417 U.S. 921 (1974) ("It is not consonant with the rulemaking proceeding to promulgate rules on
the basis of inadequate data, or on data that, to a critical degree, is known only to the agency" and "[i]n
order that rule-making proceedings . . . be conducted in orderly fashion, information should generally be
disclosed as to the basis of a proposed rule at the time of issuance."); see also, Koch, supra, § 4.7.

 Section 2001.024 of the APA requires that the published notice include, in addition to the
items listed in that section, "any other statement required by law." One such "other statement" is that
required by Texas Government Code section 2006.002, a statute pertaining to the adoption of rules
affecting "small businesses," defined as legal entities independently owned and operated for profit with
fewer than 100 employees or less than one-million dollars in annual gross receipts. See Tex. Gov't Code
Ann. § 2006.001(1) (West 1997). The statute provides as follows in section 2006.002(c):


(c) Before adopting a rule that would have an adverse economic effect on small
businesses, a state agency shall prepare a statement of the effect of the rule on small
businesses. The statement must include:


(1) an analysis of the cost of compliance with the rule for small businesses; and


(2) a comparison of the cost of compliance for small businesses with the cost of
compliance for the largest businesses affected by the rule, using at least one of
the following standards:


(A) cost for each employee;


(B) cost for each hour of labor; or


(C) cost for each $100 of sales.


(C) The agency shall include the statement of effect as part of the notice of the proposed
rule that the agency files with the secretary of state for publication in the Texas
Register.



Tex. Gov't Code Ann. § 2006.002(c), (d) (emphasis added).

 Statutes of this kind have two objectives. The first is to obtain as early as possible in the
rulemaking proceeding an objective assessment of the agency's proposed action by forcing it to consider
seriously, in detail and in orchestration, the various factors named in the statute--in this instance the effect
of the rule on small businesses, including an analysis of their costs of complying with what the rule would
require and a comparison of their costs with the cost of compliance expected for the largest businesses
affected by the rule, using one of the three statutory measures mentioned in Texas Government Code
section 2006.002(c)(2)(A)-(C). The second objective is to afford adequate notice--to place the agency's
assessment before interested persons in advance in order that (1) interested persons might comment
intelligently on the proposed rules and (2) the agency might exercise intelligently its responsibilities in arriving
at the contents of the rule as finally adopted, in stating reasons for and against adoption, and in formulating
the required contents of the adopting order, including a "reasoned justification" for the rule. See APA
§ 2001.029 (public comment), APA § 2001.030 (statement of reasons for or against adoption), APA §
2001.033 (required contents of order adopting rule); see also Koch, supra, §§ 4.31-4.36; Bonfield,
supra, §§ 6.5.1-6.5.6.


The Commissioner's Notice

 In his notice of the proposed rules, published in the Texas Register as required by APA
section 2001.023, the Commissioner stated:


There will be no effect on small businesses. Some pawnbrokers will incur increased
costs associated with minimum requirements for amounts of general liability and fire
insurance. In addition, some pawnbrokers will incur increased costs for adequate alarm
systems and safes for the security of pledged jewelry. Other pawnbrokers will not incur
increased costs as they currently meet the proposed requirements. There is no information
reasonably available from which to estimate a specific cost amount.



19 Tex. Reg. 4606 (1994) (emphasis added). The emphasized portions of the Commissioner's statement
necessarily imply his antecedent conclusions that (1) all small-business pawnbrokers fell within the class
of pawnbrokers that currently met the proposed requirements as to alarm systems, safes, and insurance
and (2) that no other requirements in the proposed rules would have the effect of increasing their costs.

 It is undisputed that the Commissioner's statement includes neither an analysis of the cost
of compliance for small businesses nor a comparison of the cost of compliance as between small businesses
and the largest businesses affected by the proposed rules, as contemplated in Texas Government Code
section 2006.002(c). The Commissioner contends he was not legally required to include the two items in
his notice.

 The Commissioner points out that the first sentence of Texas Government Code section
2006.002(c) conditions the required analysis and comparison upon the proposed adoption of "a rule that
would have an adverse economic effect on small businesses;" and, because he concluded "[t]here will be
no effect on small businesses," he was not required to supply the analysis and comparison. We will judge
under that theory the adequacy of the notice in light of the legislative objectives mentioned above.

 The proposed rules purport to affect alike both small-business and large-business
pawnbrokers. In the face of that fact, the Commissioner reached conclusions that the costs of small-businesses would not be increased because (1) they complied presently with the proposed requirements
as to insurance, alarm systems, and safes, and (2) none of the other proposed requirements would increase
their costs. The notice in the Texas Register is absolutely silent regarding any basis for these conclusions. 
It is not to be supposed that the legislative objectives behind APA section 2001.024 and Texas
Government Code section 2006.002 required that the Commissioner recite in his published notice every
piece of information he relied upon in reaching his conclusions. We believe, however, that he was obliged
to state in the notice some basis in order that interested persons might know and confront that basis in a
meaningful way in their comments to the Commissioner. Unless they were supplied some such basis, the
Commissioner's invitation to comment on the proposed rules was a masquerade, a disingenuous and
counterfeit compliance with the invitation to comment required by APA section 2001.024(7). So much
is evident in the Commissioner's responses to the comments he did receive. These indicate that the grounds
for his conclusions included his understanding of sound business practices, the legal meaning of the rules,
agency policy, factual data obtained from his examination of pawnshops, (5) and perhaps other matters as
well. See 19 Tex. Reg. 7075-97 (September 9, 1994).

 For example, one interested person commented that a particular record-keeping
requirement in the proposed rules would "add at least eight disposition files" to those a pawnbroker was
required to keep. The Commissioner responded that under his interpretation of the proposed rules they
did "not mandate the establishment of new separate files." Another interested person commented that the
proposed rules would require pawnshops to engage a certified public accountant to compile and maintain
the records contemplated in the proposed rules, at a cost of perhaps $500 per month. The Commissioner
responded that "many pawnbrokers already utilize the services of CPA's" and, moreover, "it behooves
any business person to consult with an accountant" for business purposes. One commenter claimed the
minimum amount of general liability insurance mandated by the proposed rules "may be too costly for some
shop owners and may run some of them out of business." The Commissioner responded that his "surveys"
(evidently his examinations of pawnshops) indicated that "many pawnbrokers" presently carried the
required amount of insurance and that "[c]ost figures cited by examiners would not put any pawnbroker
out of business." The cited "cost figures" were not revealed in the Commissioner's response. Nothing in
the Commissioner's responses suggests a specific basis for his conclusions that all small-business
pawnbrokers presently comply with the rules in the matter of safes, insurance, and alarm systems. Indeed,
he declined to respond to a comment that the proposed rules "would particularly impact the small,
independent pawnbroker to a greater degree than the public companies who operate on their stockholder's
money." The Commissioner concluded the comment did not require a response because it was too general
and did not focus "on specific proposed language" in the proposed rules. We observe, however, that the
generality of the comment equaled and was perhaps dictated by the opaque generality of the
Commissioner's own conclusion, set forth in his published notice initiating the rulemaking proceeding, that
"[t]here will be no effect on small businesses."

 The Commissioner's responses to public comments showed that his conclusions--that
small-business pawnbrokers would not incur increased costs because they presently complied with the
proposed requirements as to insurance, safes, and alarm systems, and no other requirements in the
proposed rules would increase their costs--might have rested upon any number of grounds: factual data
gathered from "surveys," proper business-management practices, rule interpretations, and agency-policy
considerations. The concept of adequate notice required that interested persons be apprised in advance
of these grounds in order that they might comment meaningfully as to their soundness or applicability. The
Commissioner's notice was absolutely silent regarding such grounds. We therefore hold the notice did not
substantially comply with the requirements of APA section 2001.024 and Texas Government Code section
2006.002(c). See Methodist Hosps. v. Industrial Accident Bd., 798 S.W.2d 651, 654 (Tex.
App.--Austin 1990, writ dism'd w.o.j.) ("substantial compliance" with statutory requirement contemplates
acts that secure legislative objectives while coming fairly within character and scope of thing required, in
concise, specific, and unambiguous terms).

 The Commissioner argues next that he was not required to supply in the notice an analysis
of the cost of compliance and a comparison between large and small businesses because Texas
Government Code section 2006.002 requires that he do so only when a proposed rule has a
disproportionate effect on small businesses as compared to the largest businesses affected by the rule. 
We reject the contention. It is facially inconsistent, of course, with the Commissioner's stated conclusion
that costs to small businesses will not be affected at all by the proposed rule. Moreover, the notice omits
to indicate that the Commissioner concluded the cost of compliance would not be disproportionate and
the grounds upon which that conclusion rested; his statement is entirely silent regarding the idea of
proportionality and we must judge the sufficiency of the published notice by what it states on its face. 
Finally, we reject the Commissioner's interpretation of section 2006.002 because the text of the statute
does not state or imply the condition he advocates. Instead, the statute provides simply and expressly, in
unambiguous terms, that the analysis and the comparison are required before an agency may adopt "a rule
that would have an adverse economic effect on small businesses." We may not remodel the statute to
incorporate a requirement of proportionality--a condition not obviously suggested by the statutory text. 
See Commonwealth of Massachusetts v. United N. & S. Dev. Co., 168 S.W.2d 226, 229 (Tex. 1942).

 For the reasons given, we sustain appellant's first and second points of error and need not
discuss their points of error three through eight in which they complain the rules are invalid on other
procedural and substantive grounds.


ATTORNEY'S FEES


 In their trial-court petition, appellants also pleaded a cause of action for declaratory relief
under the Uniform Declaratory Judgments Act set forth in section 37.004 of the Texas Civil Practice and
Remedies Code. See Tex. Civ. Prac. & Rem. Code Ann. § 37.004 (West 1997). (6) The substance of the
pleaded cause of action appears to be a request that the trial court declare the rights of the parties under
the Texas Pawnshop Act on appellants' theory that the rules in question exceeded the Commissioner's
authority under that act and other statutes. Because the Uniform Declaratory Judgments Act authorizes
the trial court to award such "costs and reasonable attorney's fees as are equitable and just" (while APA
section 2001.038 does not authorize attorney's fees at all), appellants prayed for recovery of their
attorney's fees thereunder. See id. § 37.009; cf. APA § 2001.038.

 In a ninth and final point of error, appellants complain the trial judge abused his discretion
by failing to award them their attorney's fees. Appellants argue the trial judge declined to award such fees
because he erroneously concluded all but one of the agency rules were valid. We cannot know the basis
of the trial-court ruling, however, because there are no findings of fact before us and none were requested
in the trial court. A prevailing party in a declaratory judgment action is not entitled to attorney's fees simply
as a matter of law; entitlement depends upon what is equitable and just and the trial judge's power is in that
respect discretionary. See Worford v. Stamper, 801 S.W.2d 108, 109 (Tex. 1990). Without findings
of fact showing the basis for the trial judge's exercise of discretion, we cannot conclude as a matter of law
that he abused that discretion in declining to award attorney's fees. We therefore overrule appellants' ninth
point of error.


THE CROSS-APPEAL


 The Commissioner contends by cross-appeal that the trial court erroneously held one of
the proposed rules, Rule 85.31, invalid. We have determined above that all the proposed rules are invalid
for want of substantial compliance with APA section 2001.024 and Texas Government Code section
2006.002(c). We therefore overrule the Commissioner's cross-point.

 We reverse the trial-court judgment insofar as it holds all the proposed rules save Rule
85.31 are not invalid; we affirm the judgment below insofar as it declares Rule 85.31 invalid and declines
to award attorney's fees to appellants. We render judgment declaring each of the rules invalid, the sole
relief requested by appellants, for the reasons stated in our opinion. See Tex. R. App. P. 43.2(c).



 John Powers, Justice

Before Justices Powers, Aboussie and B. A. Smith

Reversed and Rendered in Part; Affirmed in Part

Filed: October 30, 1997

Publish

1. The appellants are Unified Loans, Inc., d/b/a Doniphan Pawn & Surplus; Action Loans, Inc.; Big
Tex Pawn; W.J. Murphy, Inc.; Sub-Del, Inc.; Camp's Jewelry and Loan; and Casa View Pawn Shop. 
The Commissioner's rulemaking power is delegated in Tex. Rev. Civ. Stat. Ann. art. 5069-51.09(b) ("The
Commissioner may make regulations necessary for the enforcement of this Act and consistent with all its
provisions.").
2. The rules may be summarized as follows: 


Section 85.21 prescribes detailed accounting procedures to be followed by
pawnbrokers; they may use electronic data processing systems in lieu of paper
records, so long as each computer system is approved by the commissioner. 

Section 85.31 requires a pawnbroker to assist crime victims by searching pawnshop
records for stolen goods upon request, notifying police and victims of the results of
the search, and holding certain merchandise in the store until the search is complete. 
The pawnbroker must also maintain crime-victim assistance records as prescribed by
the rule. 


Section 85.41 requires pawnbrokers to maintain specified levels of fire and general
liability insurance. It also requires pawnbrokers who deal in pledged jewelry either
to obtain written approval of their safes from insurance carriers or to maintain safes
with an Underwriters Laboratory rating of TL-15. Finally, section 85.41 prescribes
proper storage locations for pledged goods. 

Section 85.51 makes a pawnbroker liable for loss of or damage to pledged goods
and requires a pawnbroker to disclose information to customers about liability and
pawn-service charges. 


Section 85.61 sets guidelines for pawnshop advertising. 


Section 85.71 requires pawnbrokers to take corrective action for any discovered
violation of the Texas Pawnshop Act and to prepare a report detailing that action. 


Section 85.81 contains several miscellaneous provisions regulating the hours and days
of pawnshop operation, the calculation of pawn-service charges, and outdoor signs
and storage. It also specifies a mandatory hold period of 20 calendar days for any
item of personal property acquired by a pawnbroker from the general public. 


The rules implement various statutory provisions. See Tex. Rev. Civ. Stat. Ann. arts. 5069-51.09, 5069-51.16(a), 5069-51.17(B) (West 1987 & Supp. 1997).
3. The trial court received evidence relative to appellants' claims that the rules were invalid on
substantive grounds and on grounds that the Commissioner failed to comply with applicable statutory
procedures. We discuss in the text one such procedural ground--a want of adequate notice--and
determine appellants' points of error from the face of the Commissioner's notice of the proposed rules
published in the Texas Register. Cf. National Ass'n of Indep. Insurers v. Texas Dep't of Ins., 925
S.W.2d 667, 669 (Tex. 1996); Methodist Hosps. v. Industrial Accident Bd., 798 S.W.2d 651, 659
(Tex. App.--Austin, writ dism'd w.o.j.) (determining validity of adopted rules from published contents
thereof as compared to what statutory procedures required).


 Because we measure the validity of the proposed rules by the content of the Commissioner's
notice published in the Texas Register, the body of evidence received in the trial court is irrelevant to our
decision. We do not, therefore, reach several interesting issues pertaining to the propriety of receiving
evidence in the trial court in a de novo proceeding aimed at agency rules that result from informal or
"notice-and-comment" rulemaking. See generally Bernard Schwartz, Administrative Law § 10.13 (2d
ed. 1984); Arthur Earl Bonfield, State Administrative Rule Making § 9.2.7 (1986); Carl A. Auerbach,
Informal Rule Making: A Proposed Relationship Between Administrative Procedures and Judicial
Review, 72 Northwestern L.Rev. 15 (1977).
4. A legislative body is free, of course, to prescribe a formal "on the record" or "trial-type"
rulemaking procedure in which evidence is taken and recorded and findings of fact are arrived at by the
agency which support the rules as finally promulgated. Judicial review of such rules is similar to that
conducted in the review of agency adjudications: are the rules reasonable in light of the facts found by the
agency and are those facts reasonable inferences from the evidence contained in the agency record; that
is to say, are the facts supported by "substantial evidence?" Congress has enacted a few such statutes.
Professor Schwartz criticizes them in the following language:


Trial-type procedures, with a requirement of basis on the record, are out of place in
rulemaking. They imprison a legislative process within a formal straitjacket designed
for an entirely different type of proceeding and may produce a virtual paralysis of the
administrative process.


Schwartz, Administrative Law § 4.9, page 170 (2d ed. 1984).
5. The provisions of article 5069-51.08 delegate to the Commissioner a power of "examination,"
that is to say, a power to investigate a pawnbroker's place of business, records, papers, files, safes, vaults,
and other aspects of the business. See Tex. Rev. Civ. Stat. Ann. art. 5069-51.08 (West Supp. 1997).
6. In our discussion of the point of error we assume the Uniform Declaratory Judgments Act
authorizes an action to determine the validity or applicability of agency rules. We do not decide the matter.


ith an Underwriters Laboratory rating of TL-15. Finally, section 85.41 prescribes
proper storage locations for pledged goods. 

Section 85.51 makes a pawnbroker liable for loss of or damage to pledged goods
and requires a pawnbroker to disclose information to customers about liability and
pawn-service charges. 


Section 85.61 sets guidelines for pawnshop advertising. 


Section 85.71 requires pawnbrokers to take corrective action for any discovered
violation of the Texas Pawnshop Act and to prepare a report detailing that action. 


Section 85.81 contains several miscellaneous provisions regulating the hours and days
of pawnshop operation, the calculation of pawn-service charges, and outdoor signs
and storage. It also specifies a mandatory hold period of 20 calendar days for any
item of personal property acquired by a pawnbroker from the general public. 


The rules implement various statutory provisions. See Tex. Rev. Civ. Stat. Ann. arts. 5069-51.09, 5069-51.16(a), 5069-51.17(B) (West 1987 & Supp. 1997).
3. The trial court received evidence relative to appellants' claims that the rules were invalid on
substantive grounds and on grounds that the Commissioner failed to comply with applicable statutory
procedures. We discuss in the text one such procedural ground--a want of adequate notice--and
determine appellants' points of error from the face of the Commissioner's notice of the proposed rules
published in the Texas Register. Cf. National Ass'n of Indep. Insurers v. Texas Dep't of Ins., 925
S.W.2d 667, 669 (Tex. 1996); Methodist Hosps. v. Industrial Accident Bd., 798 S.W.2d 651, 659
(Tex. App.--Austin, writ dism'd w.o.j.) (determining validity of adopted rules from published contents
thereof as compared to what statutory procedures required).


 Because we measure the validity of the proposed rules by the content of the Commissioner's
notice published in the Texas Register, the body of evidence received in the trial court is irrelevant to our
decision. We do not, therefore, reach several interesting issues pertaining to the propriety of receiving
evidence in the trial court in a de novo proceeding aimed at agency rules that result from informal or
"notice-and-comment" rulemaking. See generally Bernard Schwartz, Administrative Law § 10.13 (2d
ed. 1984); Arthur Earl Bonfield, State Administrative Rule Making § 9.2.7 (1986); Carl A. Auerbach,
Informal Rule Making: A Proposed Relationship Between Administrative Procedures and Judicial
Review, 72 Northwestern L.Rev. 15 (1977).
4. A legislative body is free, of course, to prescribe a formal "on the record" or "trial-type"
rulemaking procedure in which evidence is taken and recorded and findings of fact are arrived at by the
agency which support the rules as