# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00788-CV

### Texas Shrimp Association; Ocean Breeze, Inc.; Candy, Inc.; and Wilma Anderson, Appellants

**v.**

### Texas Parks and Wildlife Department; Texas Parks and Wildlife Commission and Commissioners; Lee M. Bass, Chairman; Carole E. Dinkins, Vice-Chairman; and Members, Ernest Angelo, Jr.; John Avila, Jr.; Richard W. (Dick) Heath; Al Henry; Katherine Armstrong Idsal; Nolan Ryan; and Mark E. Watson, Appellees

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT NO. GN003257, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The Texas Shrimp Association, a non-profit corporation acting as a trade association on behalf of the Texas shrimping industry, appeals from the district court's final judgment denying its challenge to the Texas Parks and Wildlife Commission's newly-adopted rules regulating the shrimping industry.[1] *See* 31 Tex. Admin. Code §§ 58.102, .160-61, .163-65 (2005). The Association argues that the court erred in upholding the Commission's action because the rules violated various procedural requirements of the Texas Parks and Wildlife Code and the Texas Government Code.

---

[1] Because the interests of the appellants coincide, for convenience, we will refer to them as "the Association."

The Association asks that this Court reverse the district court, declare the rules void and unenforceable, enjoin the Commission from implementing the rules, and remand the case with instructions that the rules are to be adopted in compliance with various procedural requirements. We affirm the district court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2000, various amendments to existing shrimping regulations were proposed by the Commission. *See* 25 Tex. Reg. 6666 (2000) (31 Tex. Admin. Code §§ 53.3, .6, .7) (proposed July 14, 2000); 25 Tex. Reg. 6670 (2000) (31 Tex. Admin. Code §§ 58.102, .160-61, .163-65) (proposed July 14, 2000). In October, the Commission adopted those rule amendments. *See* 25 Tex. Reg. 10152 (2000) (31 Tex. Admin. Code §§ 53.3, .6, .7); 25 Tex. Reg. 10157 (2000) (31 Tex. Admin. Code §§ 58.102, .160-61, .163-65). According to the Commission, the rules were designed to "reduce growth and biological overfishing . . . to increase economic value by deferring the harvest of juvenile shrimp until they reached larger, more valuable sizes and by increasing spawning of adult shrimp, and to reduce the incidental take of endangered sea turtles and other aquatic life." Examples of rule amendments include increased fees for various licenses, increasing the mesh sizes of nets, creating a closed area in part of the Gulf of Mexico from the beach out to five nautical miles, extending the winter closed season, and mandating the use of bycatch[2] reduction devices. *See* 25 Tex. Reg. 6666, 6670 (2000).

---

[2] "'Bycatch' refers to unwanted catch of non-target organisms. A bycatch reduction device is a device installed in a shrimp net that allows other species to escape the net without injury." *Lambright v. Texas Parks & Wildlife Dep't.*, 157 S.W.3d 499, 502 n.2 (Tex. App.—Austin 2005, no pet.).

The Association sued to have the amendments declared void and to enjoin the Commission from enforcing them. The district court rendered a final judgment in the Commission's favor. On appeal, the Association argues that the Commission violated various procedural requirements in its adoption of the rule amendments.[3] Specifically, it argues that the Commission failed (i) to conduct the economic impact analysis required by Texas Parks and Wildlife Code section 77.007(f); (ii) to conduct the economic impact analysis to provide a "reasoned justification" pursuant to section 2001.033 of the Texas Government Code, which rendered the notice required by sections 2001.023 and 2001.024 inaccurate and insufficient; (iii) to give a regulatory impact analysis required by section 2001.0225; (iv) to give a local employment impact statement required by section 2001.022; and (v) to prepare a statement of the adverse effects on small and micro-businesses required by section 2006.002 of the Texas Government Code. *See* Tex. Parks & Wild. Code Ann. § 77.007(f) (West 2002); Tex. Gov't Code Ann. § 2001.022 (West 2000 & Supp. 2004-05), §§ 2001.0225, .023, .024, .033, 2006.002 (West 2000).

**ANALYSIS**

**Standard of Review**

This case turns in part on statutory construction. Statutory construction is a question of law, which this Court reviews *de novo*. *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003); *Texas Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex. 2002). However,

---

[3] We previously considered substantive challenges to the rule amendments in *Lambright*, 157 S.W.3d at 502.

"[a]n administrative agency is created to centralize expertise in a certain regulatory area and, thus, is to be given a large degree of latitude by the courts in the methods by which it accomplishes its regulatory function." *Public Util. Comm'n v. GTE-Southwest, Inc*., 901 S.W.2d 401, 409 (Tex. 1995) (quoting *City of Corpus Christi v. Public Util. Comm'n*, 572 S.W.2d 290, 297 (Tex.1978)). Further, "[c]onstruction of a statute by the administrative agency charged with its enforcement is entitled to serious consideration, so long as the construction is reasonable and does not contradict the plain language of the statute." *Tarrant Appraisal Dist. v. Moore*, 845 S.W.2d 820, 823 (Tex. 1993); *see also Cities of Austin, Dallas, Fort Worth, & Hereford v. Southwestern Bell Tel. Co.*, 92 S.W.3d 434, 441-42 (Tex. 2002). If the agency's interpretation of the statute is a reasonable reading, this Court should affirm that reading if it is consistent and in harmony with the rest of the statute and gives effect to the legislature's intent. *See Steering Comms. for Cities Served by TXU Elec. v. Public Util. Comm'n*, 42 S.W.3d 296, 300 (Tex. App.—Austin 2001, no pet.).

Texas Government Code section 2001.035(a) requires that administrative rules be in "substantial compliance" with sections 2001.0225 through 2001.034. Tex. Gov't Code Ann. § 2001.035(a) (West 2000). Substantial compliance with a statutory requirement contemplates acts that secure the legislative objectives while coming fairly within the character and scope of each action or thing required in concise, specific, and unambiguous terms. *Unified Loans, Inc. v. Pettijohn*, 955 S.W.2d 649, 654 (Tex. App.—Austin 1997, no pet.).

**Shrimp Management Plan**

Texas Parks and Wildlife Code section 77.007 authorizes the Commission to regulate the shrimping industry: "The commission by proclamation may regulate the catching, possession,

purchase, and sale of shrimp. . . ." Tex. Parks & Wild. Code Ann. § 77.007(a) (West 2002). It

conditions such proclamations on the adoption of an "economic impact analysis":

> The commission shall make no proclamation under this chapter until it has approved
> and adopted a shrimp management plan and economic impact analysis prepared by
> the department as provided in Section 77.004 and unless such proclamation is shown
> to be consistent with the shrimp management plan.

*Id*. § 77.007(f). Section 77.004 provides that "[t]he department shall conduct continuous research

and study of" various listed factors affecting shrimp resources and the shrimping industry. *Id*.

§ 77.004(a) (West 2002).

In 1989, the Commission adopted an economic impact analysis. It then adopted its

initial regulatory rules in 1990. *See* 15 Tex. Reg. 2438 (1990) (31 Tex. Admin. Code §§ 57.660-62).

It later adopted amendments in 1994, without explicitly adopting a new or different economic impact

analysis. *See* 19 Tex. Reg. 3493 (1994) (31 Tex. Admin. Code §§ 57.661-62). Finally, it adopted

the amendments at issue here in 2000, again without explicitly adopting an impact analysis different

from the 1989 one. *See* 25 Tex. Reg. 10152, 10157 (2000).

The Association urges that the proper interpretation of the statute is one that places

an obligation on the Commission to adopt an economic impact analysis prior to each new

proclamation, that is, prior to each new adoption of a set of rules. This interpretation is reasonable.

But section 77.007(f) requires a Commission proclamation to be conditioned on the adoption of an

economic impact analysis "prepared by the department as provided in Section 77.004." Tex. Parks

& Wild. Code Ann. § 77.007(f). Section 77.004 makes no reference to an "economic impact

analysis" or statement or any obligation other than that of the department to "conduct continuous research and study." *See id*. § 77.004(a).[4]

The Association would understand the function of "continuous" to qualify not only the obligation to conduct research and study, but to require an impact analysis prior to any proclamation such that there must be repeated impact analyses, one newly adopted prior to each proclamation. The Commission has interpreted the statute differently. It has understood section 77.004 to independently obligate it to conduct continuous research and study, and section 77.007 to independently obligate it to adopt an economic impact analysis based on such past research prior to any subsequent proclamations—without requiring additional future impact analyses—and argues it has fulfilled these independent obligations. This is also a reasonable interpretation. The Commission also has apparently relied on this interpretation.[5] Both interpretations are consistent with the language of the statutes. Nothing in the statutes expressly requires the agency to prepare a new shrimp management plan and economic impact analysis each time it amends a rule affecting

---

[4] In 2001, the legislature enacted section 77.005 providing that "[t]he department may repeat the study and report as necessary to adequately regulate the shrimp industry and to preserve shrimp resources" and "[t]he commission shall base policies and rules relating to shrimping on the results of the most recent study completed under this section." Tex. Parks & Wild. Code Ann. §§ 77.005(d), (e) (West 2002).

[5] For example, in adopting its 1994 rule amendments, the Commission explained that the "Texas Shrimp Fishery Management Plan Economic Impact Statement [was] approved and adopted by the Texas Parks and Wildlife Commission in November 1989." 19 Tex. Reg. 3493 (1994) (31 Tex. Admin. Code §§ 57.661-62).

the shrimping industry. The Commission's interpretation is reasonable and does not conflict with the plain language of the statutes.

Due to the Commission's familiarity and expertise with the shrimping resources and the shrimping industry, and the legislative scheme delegating this function to the Commission, it is better suited than this Court to decide whether it is appropriate to rely on a past economic impact analysis or whether it should adopt a new one. Whether a new analysis is needed is dependent on the Commission's "continuous research and study" and its management plan, the creation of which is solely within its function and purview. *See id*. As the Commission urges, "until it changes the management strategies . . . of the Shrimp Fishery Management Plan, there's no need to change its statement analyzing those strategies. . . . If it revised its strategies, it would review and revise its statement analyzing those strategies, as needed."

This court will affirm an agency's reasonable interpretation of a statute, even when other reasonable interpretations exist, and will give deference to the agency's expert understanding of the best way to carry out its function. *See City of San Antonio*, 111 S.W.3d at 25; *Steering Comms.*, 42 S.W.3d at 300. Because we conclude the Commission's interpretation is reasonable, and that its reliance on its past impact analysis is within its competence, expertise, and discretion, we conclude that it was in compliance with the procedural requirements of section 77.007(g).

**"Reasoned Justification" and "Notice"**

Texas Government Code section 2001.033 requires that an agency provide a "reasoned justification" for a rule as adopted that includes a summary of the comments to the rule

7

by interested parties, the agency's responses, and a summary of the factual basis for the rule. Tex. Gov't Code Ann. § 2001.033. Also, section 2001.023 requires a notice to be published in the Texas Register prior to the adoption of new rules. *Id.* § 2001.023. Section 2001.024 gives content-notice requirements, such as the inclusion of the text of the rules, an explanation, and so forth. *Id.* § 2001.024.

The Association premises its arguments regarding these issues on its claim that the Commission did not comply with the "economic impact analysis" procedural requirement. It states that the "Commission's failure to develop and consider the statutorily mandated economic impact analysis of Section 77.007(f) . . . demonstrates the Commission's failure to provide a true 'reasoned justification' for the amendments," and "the Commission's failure to develop and consider the statutorily mandated economic analysis of Section 77.007(f) renders the 'Notice' contained in the July 14, 2000 Texas Register both inaccurate and insufficient." Because we have rejected the Association's premise that the Commission failed to comply with 77.007(f), we must reject its arguments as to whether the Commission has failed to provide the statutory notice or reasoned justification.

The Association does not address how the notice fails to meet the particular content requirements of the statutes. That being the case, any such argument is waived. *See* Tex. R. App. P. 38.1(h). In any event, the notice of the proposed amendments does contain summaries of comments, responses, various data supporting the rules, and the text of the rules. *See* 25 Tex. Reg. 6666-86 (2000). Thus, the Commission was in substantial compliance with the notice and reasoned justification requirements.

8

**Regulatory Analysis of Major Environmental Rules**

Texas Government Code section 2001.0225 provides that an agency, before adopting a "major environmental rule" that meets one of several conditions, must perform a regulatory impact analysis. *See* Tex. Gov't Code Ann. § 2001.0225(b). A "major environmental rule" is defined as:

> a rule the specific intent of which is to protect the environment or reduce risks to human health from environmental exposure and that may adversely affect in a material way the economy, a sector of the economy, productivity, competition, jobs, the environment, or the public health and safety of the state or a sector of the state.

*Id*. § 2001.0225(g)(3). The agency need only conduct the regulatory impact analysis when the result of its adoption of the rule is to:

(1)  exceed a standard set by federal law, unless the rule is specifically required by state law;

(2)  exceed an express requirement of state law, unless the rule is specifically required by federal law;

(3)  exceed a requirement of a delegation agreement or contract between the state and an agency or representative of the federal government to implement a state and federal program; or

(4)  adopt a rule solely under the general powers of the agency instead of under a specific state law.

*Id*. § 2001.0225(a)(1)-(4).

The Association argues that the intent of the rule amendments is to protect the environment, as evidenced by some regulatory objects such as enhanced nursery protection and reduction of bycatch. The Commission argues that the rules' objective is to protect shrimping

9

resources and not the "environment"—as in water, land, or air—and that they have a beneficial impact on the economy. We are unpersuaded by the Commission's argument. Absent a specific legislative definition, the term "environment" is broad enough to include natural resources such as aquatic and marine life. The second prong of the definition itself states that the rule is invoked when it "may adversely affect in a material way" the economy, a sector of the economy, productivity, competition, jobs, or the environment. *Id*. § 2001.0225(g)(3). There need only be the possibility or potential of an adverse effect. Thus, the rule amendments plausibly fall under the definition of a "major environmental rule." From this argument, however, the Association contends that the impact analysis is required since the rule amendments trigger conditions (1), (2), and (4) of section 2001.0225(a).

The Association argues that the rules exceed a standard set by federal law by virtue of there being no standard set by federal law on the regulated entity, and that they exceed an express requirement of state law by virtue of there being no such express requirement. Under the Association's reading, any rule would exceed a federal standard or state requirement so long as no such standard or requirement existed. The Association premises its argument that subsection (4) is triggered on its contention that the Commission violated section 77.007(f): "the 2000 Shrimp Proclamation was adopted in violation of the requirements of Chapter 77. . . . Accordingly, the Proclamation could only be lawfully adopted if it could be accomplished 'solely under the general powers of the agency instead of under a specific state law.'" However, we have rejected the argument that section 77.007(f) is violated, and thus the rule amendments were adopted under an implicitly conceded "specific state law." The Commission is correct in that the function of "set" and

10

"express requirement" is to require that there actually exist a federal standard or state requirement for the rule amendments to exceed.

Even if the rule amendments fall under the definition of a "major environmental rule," they do not trigger any of the subsections that would make conducting a regulatory impact analysis obligatory.

**Local Employment Impact Statements**

Section 2001.024 lists what shall be included in the content of the notice, including "the local employment impact statement prepared under Section 2001.022, if required." *Id*. § 2001.024(6). Section 2001.022 states that "[a]t the request of a state agency, the Texas Employment Commission shall prepare a local employment impact statement for a proposed rule"; however, "[f]ailure to comply with this section does not impair the legal effect of a rule adopted under this chapter." *Id*. § 2001.022(a), (h).

The Association contends that the Commission's failure to request such an impact statement "aggravates" its other procedural failures. Section 2001.022(h) explicitly provides that a failure to comply does not impair the effect of a rule, and so the Association's argument has no merit.

**Agency Actions Affecting Small Businesses**

The content requirements of section 2001.024 include "any other statement required by law." *Id*. § 2001.024(8). One such "other statement" is that required by section 2006.002. *Pettijohn*, 955 S.W.2d at 651. Chapter 2006 provides various procedural protections to micro- and

small businesses in terms of administrative rules that would adversely affect them. Section 2006.002(c) provides that "[b]efore adopting a rule that would have an adverse economic effect on small businesses, a state agency shall prepare a statement of the effect of the rule on small businesses." *Id*. § 2006.002(c). The statute then lists various analyses to be included in the statement. *See id*. § 2006.002(c)(1), (2).

The requirements in section 2006.002 are not absolute, but rather are conditioned on the adoption of "a rule that would have an adverse economic effect on small businesses." *Id*. § 2006.002(c). Thus, the substantial-compliance analysis for this statute is unique. We find *Unified Loans, Inc. v. Pettijohn* instructive. *See* 955 S.W.2d at 651. *Pettijohn* involved an appeal of an adoption of a rule by the Consumer Credit Commissioner relating to pawnbrokers that the appellant argued was not adopted pursuant to the statement and analysis requirement of 2006.002(c). *Id*. The Commissioner argued that he did not have to include the analyses specified in 2006.002(c) because he included a statement that there would be no adverse effect on small businesses, that some pawnbrokers would incur increased costs and others would not, and thus was in substantial compliance. *Id*. at 652. The notice, however, did not include the grounds for his stated conclusion on the effect on small businesses. The court held that he "was obliged to state in the notice *some* basis in order that interested persons might know and confront that basis in a meaningful way in their comments." *Id*. at 653. Substantial compliance requires notice of the grounds for the conclusion that there would be no effect on small businesses, grounds such as "factual data gathered from 'surveys,' proper business-management practices, rule interpretations, and agency-policy considerations." *Id.*

The record includes the affidavit of Wilma Anderson, executive director of the Association. In her affidavit, Anderson avers generally that the Association is made up of micro- and small businesses, and that the rule amendments would have a negative impact on the shrimping industry, including the smaller businesses, and "a particularly harsh economic impact on smaller shrimping entities." *See* Tex. Parks & Wild. Code Ann. § 2006.001 (West 2000). The Commission's notice includes the statement, "[t]he proposed rules are expected to have a beneficial effect on small and micro-businesses." 25 Tex. Reg. 6670, at 6675 (2000). The Commission provides various bases for this conclusion. It states that the establishment of a 100-count requirement and increasing mesh sizes should allow for a greater escapement of smaller shrimp and increased harvest of larger shrimp. *Id*. at 6673. The expansion of protected nursery areas, reduction of the bay season, and the creation of a closed area would allow greater escapement of smaller shrimp. *Id*. at 6674. The overall expected effect of promoting greater escapement would allow the shrimp to grow to full size and encourage increased spawning, thereby increasing harvest yield. *Id*. at 6675. The goal is to increase the average landings of shrimp and reach the previous average landing levels from 1972-1976, which was about 10,553,660 pounds greater than the 1994-1998 average. *Id*. Taking account of the increased license costs, the Commission estimated that the average additional gross revenue per license holder would be between $2,229 and $5,634 per subsequent year. *Id*. Given these grounds for the Commission's conclusion that the rules would have a beneficial effect on micro- and small businesses, we cannot say that the Commission was not in substantial compliance under the *Pettijohn* analysis. *See* 955 S.W.2d at 652-53.

**Due Process**

As part of other issues, the Association suggests that its due process rights have been abridged. It urges that the Commission's failure to meet the procedural requirements of section 77.007(f) "violates the Appellants' due process rights pursuant to the Texas and United States Constitutions." It also contends that the failure to meet the procedural requirements of sections 2001.0225, 2001.023, and 2001.024 violates such rights. Because the Association failed to provide "clear and concise" arguments for these contentions and failed to cite appropriate case authorities that would provide us with a construction of the clauses against which we could evaluate the validity of these due process claims, we consider these issues waived. Tex. R. App. P. 38.1(h). In any event, we have already concluded that the Commission has provided the requisite notice of section 77.007(f), and is in substantial compliance with sections 2001.0225, 2001.023, and 2001.024.

## CONCLUSION

Because we conclude that the trial court did not err in determining that the Commission made none of the procedural violations asserted by the Association, we overrule its issues and affirm the judgment.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed: July 27, 2005

14