ACCEPTED
15-25-00022-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
11/26/2025 4:18 PM
CHRISTOPHER A. PRINE
CLERK

No. 15-25-00022-CV

IN THE COURT OF APPEALS
FOR THE FIFTEENTH DISTRICT OF TEXAS
AUSTIN, TEXAS

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
11/26/2025 4:18:35 PM
CHRISTOPHER A. PRINE
~~Clerk~~

**CITY OF COPPELL, TEXAS; CITY OF HUMBLE, TEXAS; CITY OF DESOTO, TEXAS; CITY OF CARROLLTON, TEXAS; CITY OF FARMER'S BRANCH, TEXAS**,
*Appellants/Cross-Appellees*,

v.

**KELLY HANCOCK, ACTING COMPTROLLER OF PUBLIC ACCOUNTS OF THE STATE OF TEXAS**,
*Appellee/Cross-Appellant*,

v.

**CITY OF ROUND ROCK, TEXAS**,
*Cross-Appellee*.

On Appeal from the 201st District Court of
Travis County, Texas, Cause No. D-1-GN-21-003198
(assigned to the 250th District Court; Hon. Karin Crump, Presiding)

**BRIEF OF CITY OF ROUND ROCK, CROSS-APPELLEE**

**CINDY OLSON BOURLAND**
State Bar No. 00790343
bourland@bourlandlaw.com
Bourland Law Firm, PC

P.O. Box 546
Round Rock, Texas 78680
Tel: (512) 477-0100

**BRYAN DOTSON**
State Bar No. 24072769
bryan.dotson@chamberlainlaw.com
Chamberlain, Hrdlicka, White,
 Williams, & Aughtry, P.C.
112 E. Pecan Street, Suite 1450
San Antonio, Texas 78205
Tel: (210) 278-5844

**COUNSEL FOR CITY OF ROUND ROCK**

ORAL ARGUMENT NOT REQUESTED

## IDENTITY OF PARTIES AND COUNSEL

The lists of parties and counsel submitted by the Appellants and Cross-Appellant are correct, except that Ms. Cindy Olson Bourland and Mr. Bryan Dotson are Round Rock's trial and current appellate counsel. *See* Tex. R. App. P. 38.2(a)(1)(A).

**TABLE OF CONTENTS**

INDEX OF AUTHORITIES..................................................................... iv

STATEMENT REGARDING ORAL ARGUMENT ............................................ ix

STATEMENT REGARDING ROUND ROCK'S ......................................................x

POSTURE ON APPEAL ..........................................................................x

ISSUES PRESENTED........................................................................... xi

STATEMENT OF FACTS .........................................................................1

I.       Background........................................................................................1

         A.       Texas Local Sales Tax Sourcing Legal Framework ............................1

         B.       Local Sales Tax Policy Considerations.......................................2

         C.       Legislative History of Texas Local Sales Tax Framework....................3

         D.       Municipal Economic Development Programs: Chapter 380 of the Local
                  Government Code.........................................................................5

         E.       Dell's global headquarters is in Round Rock.......................................5

         F.       The Comptroller's disagreement with Chapter 380 Agreements .........7

         G.       The devastating fiscal impact the rule amendments will have on Round
                  Rock..........................................................................10

II.      Procedural History .........................................................................10

         A.       The 2020 Rulemaking ........................................................10

         B.       Round Rock files this lawsuit and obtains a temporary injunction ....12

         C.       Trial Court holds 2020 Notice does not comply with APA................12

         D.       The 2022 and 2023 Rulemakings..................................................13

         E.       The 2024 Repeal and Rulemaking ........................................14

         F.       Trial and Judgment ...............................................................15

SUMMARY OF THE ARGUMENT .................................................................16

ARGUMENT AND AUTHORITIES................................................................17

I.       Rule 3.334 contravenes the Texas Tax Code .............................................17

         A.       Standard of Review .........................................................17

         B.       Introduction and Statutory Framework .............................................20

         C.       Several sections of Rule 3.334 contravene the Tax Code....................23

1. Rule 3.334(a)(9) Contravenes Existing Statutes [Definition of "Fulfill"]............................................................26

2. Rule 3.334(a)(18) Contravenes Specific Statutory Language [Definition of "Place of Business"] ...........................................27

3. Rule 3.334(b)(5) Contravenes Specific Statutory Language ["A Computer is Not a Place of Business" Proxy for Internet Orders] ...................................................................................30

4. Rule 3.334(c) Contravenes Specific Statutory Language and the Tax Code's Statutory Scheme.......................................33

    a. Rule 3.334(c) [(c)(1) and (c)(2) inclusive] Contravenes the Statutory Scheme ................................................35

    b. The Trial Court Properly Enjoined All of Subsection (c) [Severability] ...........................................................37

D. The Comptroller Exceeded Statutory Authority ...............................40

E. Conclusion..........................................................................................41

II. The Comptroller did not substantially comply with the APA notice requirements. .........................................................................................43

A. The APA sets forth "minimum standards" of agency rulemaking practice and procedure. ...................................................................43

B. The fiscal impact statements included in the 2024 Notice were inadequate..........................................................................................46

C. The Comptroller did not substantially comply with the APA requirement to estimate probable compliance costs. .........................47

D. The Comptroller did not substantially comply with the APA requirement to estimate revenue loss to local governments. ..............49

E. The Comptroller did not substantially comply with APA notice requirements related to small businesses. ..........................................53

F. Conclusion..........................................................................................54

III. The Comptroller did not substantially comply with the APA's reasoned justification requirement.......................................................................55

PRAYER......................................................................................................60

CERTIFICATE OF COMPLIANCE...........................................................61

CERTIFICATE OF SERVICE ...................................................................62

# INDEX OF AUTHORITIES

**Cases**                                                                  **Page(s)**

*Accident Fund Ins. Co. of Am. v. Tex. Dep't of Ins.*,
707 S.W.3d 110 (Tex. 2025) ..............................................................20

*Bd. of Pilot Comm'rs for the Ports of Brazoria Cty. v. Gonzales*,
No. 14-99-00397-CV, 2000 WL 977408 (Tex. App.—Houston
[14th Dist.] May 18, 2000, pet. denied)..............................................39

*Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*,
467 U. S. 837 (1984)..........................................................................19

*Combs v. City of Webster*,
52311 S.W.3d 85 (Tex. App.—Austin 2009, pet. denied) ............31, 32

*Farm & Ranch Freedom All. v. Tex. Dep't of Agric.*,
No. 03-23-00459-CV, 2025 WL 994190
(Tex. App.—Austin Apr. 3, 2024, no pet.).........................................55

*Hyde v. Harrison Cnty.*,
710 S.W.3d 403 (Tex. App.—15th Dist. 2025, no pet.)......................19

*Ikb Indus. v. Pro-Line Corp.*,
938 S.W.2d 440 (Tex. 1997) ..............................................................52

*K Mart Corp. v. Cartier, Inc.*,
486 U.S. 281 (1988)............................................................................39

*Lambright v. Tex. Parks & Wildlife Dep't*,
157 S.W.3d 499 (Tex. App.—Austin 2005, no pet.)...............55, 56, 57

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024)............................................................................19

*Methodist Hosps. of Dallas v. Tex. Indus. Acc. Bd.*,
798 S.W.2d 651 (Tex. App.—Austin 1990, writ dism'd w.o.j.) ...45, 57

*Moers v. Harris Cty. Appraisal Dist.*,
469 S.W.3d 655 (Tex. App.—Houston [1st Dist.] 2015, pet.
denied)................................................................................................36

*Nat'l Ass'n of Chain Drug Stores, Inv. v. Young*,
No. 07.23-00175-CV, 2024 WL 2971681
(Tex. App.—Amarillo June 12, 2024, pet. denied) ..............................................54

*Nat'l Ass'n of Indep. Ins. v. Tex. Dep't of Ins.*,
925 S.W.2d 667 (Tex. 1996) ......................................................44, 45, 49, 54

*Office of Pub. Util. Counsel v. Pub. Util Comm'n*,
131 S.W.3d 314 (Tex. App.—Austin 2004, pet. denied) ............................36, 37

*Pub. Util. Comm'n of Tex. v. Luminant Energy Co. LLC*,
691 S.W.3d 448 (Tex. 2024) ......................................................................18

*Reliant Energy, Inc. v. Pub. Util. Comm'n of Tex.*,
62 S.W.3d 833 (Tex. App.—Austin 2001, no pet.)................................55, 56, 58

*R.R. Comm'n v. Arco Oil & Gas Co.*,
876 S.W.2d 473 (Tex. App.—Austin 1994, writ denied)........................55, 56, 57

*RWE Renewables Ams., LLC v. Pub. Util. Comm'n of Tex.*,
669 S.W.3d 566 (Tex. App.—Austin 2023, pet. granted)............................50, 54

*Sixth RMA Partners, L.P. v. Bradberry*
111 S.W.3d 46 (Tex. 2003)..........................................................................51

*Shields Ltd. P'ship v. Bradberry*,
526 S.W.3d 4714 (Tex. 2017) ......................................................................51

*State v. Hollins,*
620 S.W.3d 448 (Tex. 2024) ........................................................................18

*Sw. Bell Tel. Co. v. Pub. Util. Comm'n*,
888 S.W.2d 921 (Tex. App.—Austin 1994, writ denied)..................................39

*Tex. Bd. of Chiropractic Exam'rs v. Tex. Med. Ass'n*,
616 S.W.3d 558 (Tex. 2021) ....................................................................18, 19

*Tex. Dep't of Banking v. Restland Funeral Home, Inc.*,
847 S.W.2d 680 (Tex. App.—Austin 1993, no writ) ........................................39

*Tex. Shrimp Ass'n v. Tex. Parks & Wildlife Dep't,*
No. 03-04-00788-CV, 2005 WL 1787453
(Tex. App.—Austin July 27, 2005, no pet.) (mem. op.)....................................45

*Tex. State Bd. of Exam'rs of Marriage & Family Therapists v.*
   *Tex. Med. Ass'n*,
   511 S.W.3d 28 (Tex. 2017)...................................................................19

*TGS-NOPEC Geophysical Co. v. Combs*,
   340 S.W.3d 432 (Tex. 2011) ...................................................17, 18, 21

*Unified Loans, Inc. v. Pettijohn*,
   955 S.W.2d 649 (Tex. App.—Austin 1997, no pet.)...............................*passim*

**Statutes and Rules:**

34 Tex. Admin. Code:

   § 3.334 ...................................................................................*passim*

   § 3.334(a)(9) ...........................................................................*passim*

   § 3.334(a)(18) ...........................................................16, 23, 27, 28

   § 3.334(b)(5) ...........................................................................*passim*

   § 3.334(c) ...............................................................................*passim*

Tex. Gov't Code:

   § 2001.001(1)...........................................................................49

   § 2001.024 ........................................................................44, 48

   § 2001.024(a)(4)(C)...........................................................13, 46

   § 2001.024(a)(4)(D)..................................................................13

   § 2001.024(a)(5) ...............................................................46, 48

   § 2001.024(a)(8) ......................................................................46

   § 2001.033(a)(1)(C)..................................................................57

   § 2001.035(a)................................................................44, 48, 49

   § 2001.042 ........................................................................19, 20

   § 2006.002 .........................................................................14, 44

§ 2006.002(c) ..................................................................44, 53

Tex. Tax Code:

§ 111.002(a) ................................................33, 40, 41, 42

§ 151.00393 ...............................................................29

§ 321.002(a)(3)(A) ..........................................16, 28, 42

§ 321.101(a) ...............................................................1

§ 321.201(a) ...............................................................1

§ 321.203 ...........................................................*passim*

§ 321.203(a) ......................................................26, 37

§ 321.203(b) .......................................................*passim*

§ 321.203(d)(1) .........................................................32

§ 321.203(e) ..............................................................21

§ 321.301 ...................................................................1

§ 321.502 ...................................................................2

§ 323.203 ...........................................................*passim*

Tex. Loc. Gov't Code:

§ 380.001(a) ..............................................................5

**Other Authorities**

Tex. R. App. P. 9.4(i)(1) ...............................................61

Tex. R. App. P. 38.2(a)(1)(A) .........................................i

Tex. R. App. P. 38.2(a)(1)(B) .........................................1

Tex. R. App. P. 39.7 .....................................................ix

Tex. Const. art. III, § 52-a..............................................5

Tex. Atty. Gen. Op. DM-185, 1992 WL 525330 .......................................................6

Ron Beal, *Challenging the Factual Basis and Rationality of a Rule Under APTRA*, 45 Baylor L. Rev. 1 (1993)............................................................55

John J. Watkins & Debora S. Beck, *Judicial Review of Rulemaking Under the Texas Administrative Procedure and Texas Register Act*, 34 Baylor L. Rev. 1 (1982) .......................................................................................56

**STATEMENT REGARDING ORAL ARGUMENT**

Round Rock disagrees with the Comptroller and Coppell Parties that oral argument is warranted in this case because well-settled case law and statutory authority govern the dispositive issues, and the facts and legal arguments are adequately presented in the briefs and record. However, if this Court grants oral argument to aid its decisional process, Round Rock respectfully requests to participate in oral argument pursuant to Texas Rule of Appellate Procedure 39.7.

**STATEMENT REGARDING ROUND ROCK'S
POSTURE ON APPEAL**

Prior to trial, Round Rock's case was consolidated by agreement with the Coppell Parties' case, in an effort by all parties to be efficient with the trial court's time. All city parties challenged the same agency rule—34 Tex. Admin. Code § 3.334 ("Rule 3.334")—and the trial court issued one Final Judgment, but because Round Rock's factual background differs in several ways from that of the Coppell Parties, so did Round Rock's legal arguments and analyses at trial.

On appeal, Round Rock is in the procedural posture of appellee and asserts that the trial court's judgment should be affirmed in full. Round Rock does not join in the Coppell Parties' request for affirmative relief from this Court. Round Rock believes that certain issues presented by the Comptroller and Coppell Parties seek relief that may be advisory in nature.

# ISSUES PRESENTED

1.  Tax Code Section 321.203(b) provides that, for local sales tax purposes, all sales are consummated at the retailer's place of business if that retailer has only one place of business in Texas. The Comptroller adopted amendments to Rule 3.334 that cause certain orders to be consummated at a location other than the retailer's one place of business, such as the place of delivery. Therefore, do the amendments to Rule 3.334 (i) conflict with Tax Code Section 321.203, (ii) run counter to the general objectives of Tax Code Section 321.203, or (iii) impose burdens, conditions, or restrictions in excess of Tax Code Section 321.203?

2.  The Texas Administrative Procedure Act ("APA") requires an administrative agency to follow certain procedures before it can adopt a rule. One such procedure is to publish a notice of the proposed rule in the Texas Register, which must include, among other things, (i) a fiscal note stating the estimated reduction in revenue to local governments, (ii) a note about the probable economic costs to persons required to comply with the rule, and (iii) a projection of how the rule will impact small businesses. The Comptroller did not provide an estimate of the reduction in revenue to local government but instead merely stated that the amendments "could result" in a net change of revenue for local governments. Further, the Comptroller did not provide an

estimate of probable compliance costs but instead stated that there "may be additional economic costs" to those who will be required to comply with the rule. Finally, the Comptroller stated it was unable to estimate the small businesses subject to the rule and did not project of the impact of the rule on small businesses. Did the Comptroller substantially comply with the APA's notice requirements?

3. The APA requires a state agency order finally adopting a rule to include, among other things, "the reasons why the agency disagrees with the party submissions and proposals." Round Rock submitted comments in response to the 2024 Notice that posed several questions regarding the proposed rule amendments to which the Comptroller did not respond. Did the Comptroller substantially comply with the APA's reasoned justification requirements?

## STATEMENT OF FACTS

Round Rock is dissatisfied with the Comptroller's Statement of Facts because it does not thoroughly describe the background, context, and history of the rule amendments that led to this lawsuit. Pursuant to Texas Rule of Appellate Procedure 38.2(a)(1)(B), Round Rock presents additional facts.

## I.     Background

### A.      Texas Local Sales Tax Sourcing Legal Framework

For decades, the Texas Tax Code has allowed municipalities to impose a local sales tax as a means of raising revenue. *See* Tex. Tax Code § 321.101(a). Any such local sales tax is imposed in addition to the 6.25% sales tax imposed by the State of Texas. *See id.* § 321.201(a).

As will be more fully discussed below, a retail sale is subject to local sales tax when it is "consummated" within the jurisdictional boundaries of a municipality that has adopted a local sales tax. *See id.* § 321.203(a). Generally, the location at which a sale is consummated for local sales tax purposes is a "place of business of the retailer." *See id.* § 321.203(b)-(d).

Although municipalities may impose a local sales tax, the Comptroller is responsible for administering, collecting, and enforcing the tax. *Id.* § 321.301. Retailers are generally responsible for reporting and remitting sales tax collected—

1

state and local—to the Comptroller. *Id.* The Comptroller then disburses the local portion to the appropriate local taxing jurisdiction. *See id.* § 321.502.

## B. Local Sales Tax Policy Considerations

Round Rock asserted at trial that the rule amendments in question were an improper attempt by a state agency to effectuate policy changes that have been rejected by the Texas Legislature. A big-picture discussion of state and local taxation was provided to the trial court for context and will be summarized here.

Professor Richard Pomp, one of the country's foremost experts on state and local taxation, 7RR12-19; Ex. D-5, explained at trial that there are several competing policy considerations state legislatures typically consider when deciding how to structure a local sales tax scheme. He testified that a sales tax is imposed on a transaction, which has two parties—the buyer and the seller, and that when the buyer and seller are in different jurisdictions, there is generally a state-specific law governing how to "source" the transaction, which means to decide which government can tax the transaction. 7RR22.

Professor Pomp testified that state legislatures typically consider several competing policy considerations when deciding how to structure a local sales tax scheme and that there are two general approaches used to source local sales tax: "origin" and "destination." 7RR22-23. An origin-sourcing regime assigns the sale to

where it originated. 7RR23-24. A destination-sourcing regime assigns the sale to the place where the purchaser takes delivery or possession. 7RR23-24.

Professor Pomp explained that the main advantage to an origin-sourcing regime is simplicity: The seller must only master the sales tax laws and rates of the jurisdiction in which it is located. 7RR27. An origin-sourcing regime is also easier for the government to audit for the same reason. 7RR27. As indicated by the Tax Code, Texas is generally an origin-sourcing state for retailers with one place of business in the state, *see* Tex. Tax Code § 321.203(b), and Professor Pomp explained that the simplicity of origin sourcing would be attractive to Texas because Texas is a big state with about 1,700 local taxing jurisdictions, 7RR30-31. He also discussed that origin sourcing makes the Comptroller's job of auditing sales tax returns easier (7RR28):

> Can you imagine the poor auditor under a destination rule that is going to have to verify whether the vendor properly identified the place of destination, properly applied the rule of that place of destination, and properly applied the rate of tax of that destination.

## C.    Legislative History of Texas Local Sales Tax Framework

In 1979, the 66th Texas Legislature enacted the predecessor to Tax Code Section 321.203. *See* Ex. D-26. The House Committee on Ways and Means for the 66th Legislature issued an Interim Report on October 2, 1980, explaining the changes the 66th Legislature made to the local sales tax. Ex. D-25. The Committee

also explained the various options to change the local sales tax framework and balance competing interests. Ex. D-25 at 12.

The Committee further explained that the major reason the Legislature adopted an origin-sourcing framework for Texas was to prevent disruption to city revenue:

> The major reason for rewriting the Local Tax Act last session **was to prevent disruption to city revenue**. Re-inacting [stet] the present statute would assure the same level of revenue to each city and **not disrupt any budgeting, planning or revenue forecasting**.

Ex. D-25 at 18-19 (emphases added). The Committee also pointed out that a significant advantage to the consummation framework applicable to retailers with a single place of business is its simplicity:

> **The rules for single outlet taxpayers could not be easier** – tax is always reported to a single location.

Ex. D-25 at 19-20 (emphasis added). The 66th Legislature considered, but ultimately rejected, a consummation framework that sources sales to the destination for a variety of reasons, including:

> Cities now receive revenue based on the retailer's location. A destination sale theory would result in a **dramatic shift** in revenue from point of sale to point of use.

Ex. D-25 at 23 (emphasis added).

Since the late 1970s, the Texas Legislature has repeatedly considered changing Texas's general origin-sourcing framework for local sales tax. None of

those efforts resulted in substantial changes to the Texas Tax Code for retailers with one place of business in the state.

## D. Municipal Economic Development Programs: Chapter 380 of the Local Government Code

The Texas Constitution authorizes the Legislature to "provide for the creation of programs and the making of loans and grants of public money" for "public purposes" that include the "development and diversification of the economy of the state." Tex. Const. art. III, § 52-a. The Texas Legislature established such a program for municipalities in 1989 by enacting Chapter 380 of the Local Government Code. Section 380.001(a) of that Code allows municipalities to

> establish and provide for the administration of one or more programs . . . to promote state or local economic development and stimulate business and commercial activity in the municipality.

Tex. Loc. Gov't Code § 380.001(a).

## E. Dell's global headquarters is in Round Rock

In the early 1990s, Dell was a growing company with its headquarters in Austin, Texas. 6RR106. When the company was outgrowing its Austin location and looking for somewhere to relocate, it hoped to stay in Central Texas but was also considering moving to Tennessee or Ireland. 6RR106. Dell approached Round Rock and said it wanted to stay in Central Texas but needed a reason to do so. 6RR106.

Round Rock and Dell entered into a Chapter 380 agreement, which is the reason that Dell chose to remain in Texas. 6RR106; 6RR120; Ex. RR-29.[1] On August 26, 1993, Charles Culpepper, then-Mayor of Round Rock, and Michael Dell, CEO of Dell Computer Corporation, signed the agreement.[2] 6RR106; Ex. RR-29. The terms of the Chapter 380 agreement generally provide that Round Rock will make periodic "Economic Development Program Payments" to Dell, which are computed in large part based on the level of local sales tax revenue Dell generates. 6RR182; Ex. RR-29.

Since 1993, Dell's presence in Round Rock has grown dramatically. Exhibit RR-31 shows how large Dell has grown just in terms of land use:



---

[1] Round Rock's trial exhibits were marked with the prefix "RR." To distinguish exhibits from the Reporter's Record, exhibits will be referred to herein as "Ex. RR-##."

[2] This Chapter 380 agreement was the first in Texas of its kind, resulting in an opinion from the Texas Attorney General regarding its constitutionality. 6RR106; Tex. Atty. Gen. Op. DM-185, 1992 WL 525330.

There is no other business in Round Rock that comes close in terms of office space square footage and impact on the city. 6RR109. Dell employs thousands of employees in Round Rock, including sales personnel, engineers, and administrators, and Round Rock has spent tens of millions of dollars to improve city infrastructure to keep up with Dell's growth. 6RR109-111; Exs. RR-37 to RR-40.

The financial benefits to Texas from Round Rock's Chapter 380 agreement with Dell have been enormous. From inception of that agreement through September 30, 2023, Dell generated more than two billion dollars for the State of Texas. Ex. RR-34. In that same time frame, Dell generated approximately $429,000,000 in revenue for the City of Round Rock, which is a crucial part of Round Rock's overall city budget. Ex. RR-34.

### F.    The Comptroller's disagreement with Chapter 380 Agreements

In October 2019, Susan Morgan, Chief Financial Officer for Round Rock, 6RR166-167, received an email from the Comptroller that included proposed amendments to the Comptroller's rule that governs local sales tax sourcing: Rule 3.334, 6RR171. Ms. Morgan immediately conferred with Round Rock's city attorney, Steve Sheets, who concluded that the amendments could cause Dell's internet sales to no longer be sourced to Round Rock. 6RR172.

Fearing the fiscal impact those amendments would have on Round Rock, Mr. Sheets and Ms. Morgan requested a meeting with the Comptroller's office. 6RR172.

7

Representatives from Round Rock and the Comptroller's office met twice during November and December 2019. 6RR115; 6RR195; 8RR63. Then-Comptroller Hegar personally attended the second meeting, along with his two deputies. 6RR115; 8RR63. Representatives of Dell and the Round Rock Chamber of Commerce were also present during these meetings. 6RR172; 8RR64.

The purpose of those meetings was for Round Rock to get an understanding of why the Comptroller was proposing the amendments. 8RR63. Mr. Sheets believed that if the Comptroller had concerns about the Chapter 380 agreement with Dell, then Round Rock could alleviate some of those concerns. 8RR63.

During the meeting, Comptroller Hegar explained that he does not think Chapter 380 agreements are good public policy. 6RR120; 8RR67. With respect to Round Rock's Chapter 380 agreement with Dell, Comptroller Hegar said that "we don't have a problem with the Dell agreement other than we think it's too long." 8RR64; 6RR192. The Comptroller's staff indicated to Round Rock that the agency was moving forward with the rule amendments despite Round Rock being "collateral damage." 6RR119.

In support of the proposed rule changes and to explain his position, Comptroller Hegar published an opinion article, titled "How some Texas cities and retailers are using a tax loophole to snatch sales tax revenue from other communities," in the February 4, 2020 edition of The Dallas Morning News. Ex.

RR-41. In the article, Comptroller Hegar claimed that "some cities and businesses have cut deals to source local sales tax on sales made over the internet solely to particular cities." Ex. RR-41. Comptroller Hegar explained that these deals are problematic because "[t]axpayers do not pay local sales tax on internet purchases with the expectation that the revenue is then being distributed to businesses and cities nowhere near their communities." Ex. RR-41. Comptroller Hegar stated he was taking the following actions to solve those problems:

> That's why my office has proposed a change to Rule 3.334 to clarify that local sales tax is tied to the place of business from which internet orders are fulfilled or the location to which items are shipped or delivered.

Ex. RR-41.

The statements in the article were consistent with the impression Comptroller Hegar left on Mr. Sheets after their face-to-face meeting. 6RR115-117. The article was published on the same day as the Comptroller's first public hearing to receive testimony and comments on the rule amendments. Ex. RR-18 at 3500.

Comptroller Hegar made similar statements during his testimony before the House Committee on Ways and Means on February 5, 2020, the day after the Comptroller's public hearing, Ex. RR-44, and in a letter to the Ways and Means Committee on September 14, 2020, Ex. RR-43.

9

**G.    The devastating fiscal impact the rule amendments will have on Round Rock**

The local sales tax collections from Dell make up a significant portion of Round Rock's budget. *See* Exs. RR-32 to RR-34. The proposed rule amendments would result in a reduction in revenue for Round Rock of $20,000,000 to $30,000,000 per year. 6RR174. Such a reduction would be "devastating," 6RR175, and would have "significant impacts on every citizen in the City of Round Rock." 6RR122; Ex. RR-53. The amount of revenue Round Rock could lose is equal to "half of our police budget" or "all of our parks and rec budget, and library budget combined." 6RR195.

Round Rock provided data to the Comptroller showing the negative fiscal impact the proposed rule amendments would have on its budget on several occasions, including during the November and December 2019 meetings between Round Rock and the Comptroller. 6RR150; 6RR172-173; 6RR175; 6RR116; Ex. RR-53 to RR-56.

**II.    Procedural History**

**A.    The 2020 Rulemaking**

The Comptroller published the first round of proposed amendments to Rule 3.334 in the January 3, 2020 edition of the *Texas Register* ("2020 Notice").[3] Ex. RR-

---

[3] For demonstrative purposes, Round Rock prepared a timeline that shows all pertinent amendments to Rule 3.334. That timeline was admitted as Ex. RR-16.

17. The relevant proposed amendment was the addition of Subsection (c)(6), which provided as follows:

> (6) Internet orders. Subparagraphs (A) - (E) of this paragraph become effective April 1, 2020.
>
> (A) General rule. Except as provided in this paragraph, Internet orders are not received at a place of business of the seller in Texas.

Ex. RR-17 at 8. The Comptroller stated in the 2020 Notice that "[t]he proposed amendments would have **no significant fiscal impact** on the state government, units of local government, or individuals." Ex. RR-17 at 102 (emphasis added).

Many parties, including the cities involved in this lawsuit, provided public testimony and written comments in opposition to the amendments. Ultimately, the Comptroller published an order adopting amendments to Rule 3.334 in the May 22, 2020 edition of the *Texas Register* ("2020 Order"). Ex. RR-18.

The Comptroller did not adopt Subsection (c)(6) as originally written. Instead, the Comptroller added Subsection (b)(5), which used slightly different terminology but achieved the same result:

> (5) Orders not received by sales personnel, including orders received by a shopping website or shopping software application. Effective October 1, 2021, these orders are received at locations that are not places of business of the seller.

11

Ex. RR-18 at 3551. The Comptroller delayed the effective date of Subsection (b)(5) "to provide the Legislature opportunity to act if it so chooses, and also allow cities and businesses times to shift from current practice." Ex. RR-43.

### B. Round Rock files this lawsuit and obtains a temporary injunction

Round Rock filed this lawsuit on July 12, 2021. On August 30, 2021, the trial court held an evidentiary hearing on Round Rock's application for a temporary injunction. During the hearing, the Comptroller agreed to a temporary injunction of Subsection (b)(5) of Rule 3.334. 3RR5-11. Subsection (b)(5) of Rule 3.334 has been enjoined by agreement since that time. CR121; CR123; CR1338; CR1340; CR1342; CR1344; CR1745.

The trial court consolidated Round Rock's case with the Coppell Plaintiffs' cases. CR1251-1252. Round Rock's live pleadings at the time of trial, its Fourth Amended Petition, are found on pages 2437 through 2570 of the Clerk's Record.

### C. Trial Court holds 2020 Notice does not comply with APA

In the 2020 Notice, the Comptroller stated that the rule amendments would have "no significant fiscal impact" on local governments, as follows:

> communities. The proposed amendments would have no significant fiscal impact on the state government, units of local government, or individuals. There would be no anticipated significant economic cost to the public.

Ex. RR-17 at 102.

Round Rock and the other plaintiff cities filed motions for summary judgment alleging that the fiscal note[4] did not comply with the notice requirements of the APA. Specifically, Round Rock alleged that the 2020 Notice did not contain the following: (1) the estimated loss or increase in revenue to the state or to local governments as a result of enforcing or administering the rule; and (2) a fiscal note that enforcing or administering the rule will not have foreseeable implications relating to cost or revenues of the state or local governments. *See* Tex. Gov't Code § 2001.024(a)(C), (D).

The Court granted Round Rock's motion for summary judgment and found as follows:

> Defendant failed to substantially comply with one or more of the procedural requirements of Section 2001.024 of the Texas Government Code in adopting amendments to 34 TAC § 3.334 resulting in 34 TAC § 3.334(b)(5). As such, Plaintiff's Motions are GRANTED, and the pertinent portions of 34 TAC § 3.334 are remanded to the Texas Comptroller of Public Accounts for revision or readoption through established procedures within a reasonable time.

CR1336-1337.

### D.     The 2022 and 2023 Rulemakings

In response to the trial court's order, the Comptroller went back into rulemaking and published proposed amendments to Rule 3.334 in the September 23,

---

[4] Round Rock also alleged that the fiscal note was demonstrably false, because Round Rock and the other cities had provided information and data to the Comptroller's office showing harmful and significant fiscal impact prior to the publication of the notice.

13

2022 edition of the *Texas Register* ("2022 Notice"). Ex. RR-20. The Comptroller published the order adopting the September 23, 2022 proposed amendments, with several changes to the substantive rule language itself, in the January 27, 2023 edition of the *Texas Register* ("2022 Order"). Ex. RR-21.

On October 27, 2023, the Comptroller published another notice of proposed amendments to Rule 3.334 in the *Texas Register* ("2023 Notice"). Ex. RR-22. That proposed amendment added subsection (c)(7) to Rule 3.334, which prescribes where an order is received by or on behalf of a seller. Ex. RR-22. The 2023 Notice did not include an estimate of loss of revenue to local jurisdictions, and the Comptroller again asserted that it was "infeasible" to do so. Ex. RR-22. The Comptroller published the order adopting the addition of Subsection (c)(7) in the January 5, 2024 edition of the *Texas Register* ("2023 Order").

### E.    The 2024 Repeal and Rulemaking

In response to the 2022 and 2023 rulemakings, Round Rock filed another motion for summary judgment on March 4, 2024. CR1514-1702. Round Rock asserted that the Comptroller had failed to provide an estimate of loss of revenue to local jurisdictions in the 2022 Notice and 2023 Notice, as required by the APA and the trial court's prior order. CR1515-1517. Round Rock also asserted that the Comptroller failed to include the economic impact statement and regulatory flexibility analysis is required by Section 2006.002 of the Texas Government Code

14

in the recent rounds of rulemaking. CR1527-1532. In lieu of a hearing, the Comptroller entered an agreed order with Round Rock and the other plaintiffs and began another rulemaking process. CR1815-1816.

On April 19, 2024, the Comptroller published two notices in the *Texas Register*. The first notice, found at 49 Tex. Reg. 2440-2442, is the notice of a proposed *repeal* of Rule 3.334, in order to replace it with a new Rule 3.334. Ex. RR-25. Simultaneously, the Comptroller published the new proposed rule, found at 49 Tex. Reg. 2442-2457 ("2024 Notice"). Ex. RR-26. On June 28, 2024, the Comptroller published two orders in the *Texas Register*. The first order adopted the repeal of Rule 3.334. Ex. RR-28 at 1. The second order adopted the newly proposed rule ("2024 Order"). Ex. RR-28. The version of Rule 3.334 that the Comptroller adopted on June 28, 2024, is the current version at issue in this case.

### F.    Trial and Judgment

The trial court heard the merits of this case from October 14-16, 2024. CR2797. At the conclusion of trial, the court rendered a Final Judgment. CR2797. The Coppell plaintiffs requested Findings of Fact and Conclusions of Law but later withdrew the request for Findings of Fact. CR2842; CR2848. The Comptroller did not request Findings of Fact or Conclusions of Law. This appeal followed.

## SUMMARY OF THE ARGUMENT

The trial court correctly found that Rule 3.334 contravenes the Texas Tax Code. First, Rule 3.334(a)(9) contravenes existing statutes by adding a conflicting definition at the agency level for which Tax Code Sections 321.203 and 323.203 already provide a detailed statutory scheme for determining where a sale of a taxable item is "consummated." Further, Rule 3.334(a)(18), (b)(5), and (c) contravene specific statutory language set forth in Tax Code Sections 321.002(a)(3)(A), 321.203, and 323.203 by requiring retailers with one place of business in the state to consummate sales at locations other than the retailer's one place of business. Finally, Rule 3.334(c) [(c)(1) and (c)(2) inclusive] contravenes the statutory scheme (set forth in Tax Code Sections 321.203 and 323.203) for determining where a sale is consummated by forcing retailers with only one place of business to follow the consummation rules in Rule 3.334(c), rather than sourcing tax to the retailer's single place of business.

The trial court also correctly found that the Comptroller did not substantially comply with the notice and reasoned justification requirements under the APA. The discussion in the 2024 Notice is inadequate because it did not provide interested parties "adequate notice" or show that the Comptroller "consider[ed], in detail and in orchestration, the various factors named in the statute." *Unified Loans, Inc. v. Pettijohn*, 955 S.W.2d 649, 651 (Tex. App.—Austin 1997, no pet.). The Comptroller

16

did not substantially comply with the reasoned justification requirements because, at a minimum, the four corners of the rule show the Comptroller did not respond to certain comments Round Rock submitted.

## ARGUMENT AND AUTHORITIES

As Round Rock will address in Sections II and III of this brief, the trial court properly determined that the Comptroller did not comply with the APA in adopting Rule 3.334. Therefore, this Court may affirm the trial court's judgment on that ground alone and need not reach the Comptroller's issues relating to statutory conflict and whether the rule runs afoul of the Texas Tax Code.

However, Round Rock has briefed the issues in the same order as the Comptroller, starting with statutory contravention. As demonstrated in Section I, the trial court also correctly found that the rule contravenes both specific statutory language and the Tax Court's general sales-tax framework for determining where a sale is consummated.

## I. Rule 3.334 contravenes the Texas Tax Code

### A. Standard of Review

When construing a statute, courts seek "to ascertain and give effect to the Legislature's intent," beginning with the statutory language. *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). "If a statute uses a term with a particular meaning or assigns a particular meaning to a term, we are

bound by the statutory usage," and undefined terms are generally given their ordinary meaning unless "a different or more precise definition is apparent from the term's use in the context of the statute," in which case courts should apply that meaning. *Id*. In addition, courts must "consider statutes as a whole rather than their isolated provisions," assuming that the Legislature chose the statutory language with purpose. *Id.*; *see Pub. Util. Comm'n of Tex. v. Luminant Energy Co. LLC*, 691 S.W.3d 448, 460–61 (Tex. 2024) (courts must "discern a statute's objectives from its plain text," reading that text "in context—not isolation," and considering statute's context and framework to find "a cohesive reflection of legislative intent" (quoting *State v. Hollins*, 620 S.W.3d 400, 407 (Tex. 2020))). When a statute is unambiguous, courts should "adopt the interpretation supported by its plain language unless such an interpretation would lead to absurd results." *Luminant Energy*, 691 S.W.3d at 460–61; *TGS-NOPEC*, 340 S.W.3d at 439.

An agency's rule is presumed to be valid, and a challenger must prove its invalidity by showing that the rule: (1) contravenes specific statutory language; (2) runs counter to the statute's general objectives; or (3) imposes burdens, conditions, or restrictions beyond or inconsistent with the relevant statute. *Luminant Energy*, 691 S.W.3d at 460. A reviewing court must determine whether the definitions adopted by the agency in its rules are consistent with the meaning of the terms used in the statute. *Tex. Bd. of Chiropractic Exam'rs v. Tex. Med. Ass'n*, 616

18

S.W.3d 558, 568 (Tex. 2021). The interpretation of statutes and their associated rules involves questions of law that courts determine de novo. *Tex. State Bd. of Exam'rs of Marriage & Fam. Therapists v. Tex. Med. Ass'n*, 511 S.W.3d 28, 33 (Tex. 2017); *Hyde v. Harrison Cnty.*, 710 S.W.3d 403, 408 (Tex. App.—15th Dist. 2025, no pet.) (interpretation of administrative rules is reviewed de novo "using the same principles that [courts] apply when construing statutes").

Finally, Round Rock would note that in the last session, the Texas Legislature enacted Section 2001.042 of the APA, codifying the holding in *Loper Bright Enterprises v. Raimondo*, in which the U.S. Supreme Court stated, "Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires." 603 U.S. 369, 412 (2024). In *Loper Bright*, the Court overruled *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U. S. 837, 843 (1984), which had required courts to defer to an agency's reasonable interpretation of a statute that is silent or ambiguous as to the issue in question. 603 U.S. at 412. Newly-enacted Section 2001.042 of the APA provides:

> Sec. 2001.042. JUDICIAL REVIEW OF STATE AGENCY LEGAL DETERMINATION REGARDING LAWS AND RULES. Notwithstanding any other law, in a judicial proceeding in this state, including an action subject to Section 2001.038, a court is not required to give deference to a state agency's legal determination regarding the construction, validity, or applicability of the law or a rule adopted by the state agency responsible for the rule's administration, implementation, or other enforcement. This section does not prohibit a

19

court from giving consideration to a legal determination made by a state agency that is reasonable and does not conflict with the plain language of the statute.

Tex. Gov't Code § 2001.042. Although Section 2001.042 only applies to a rule proposed after September 1, 2025, Round Rock believes that it is instructive as to the Legislature's most current views on agency overreach and the role of the courts. Further, it supports Round Rock's argument that the agency is not entitled to deference simply because the Comptroller is charged with enforcing the tax statutes, particularly given that the statute in question is unambiguous and that the Comptroller's rule would change the plain statutory language chosen by the Legislature. *See Accident Fund Ins. Co. of Am. v. Tex. Dep't of Ins.*, 707 S.W.3d 110, 114–15 (Tex. 2025) (Young, J., concurring in denial of pet.) ("Administrative agencies in Texas have seemingly never enjoyed the deference once endorsed by the U.S. Supreme Court, although our cases have occasionally hinted that 'the analysis in which we engage is similar.'" (citations omitted)).

B.    **Introduction and Statutory Framework**

The Comptroller's amendments to Rule 3.334 were drafted to thwart Chapter 380 agreements and thereby reallocate sales-tax revenue by shifting internet orders to destination sourcing. Because Rule 3.334 directly conflicts with the Tax Code's plain and unambiguous origin-sourcing mandate for retailers with one place of business in Texas, the trial court correctly found that Rule 3.334 contravenes existing

statutes, specific statutory language, and the statutory scheme for determining where a sale is consummated.

Under the Tax Code, where a sale of a taxable item is consummated, and thus taxed, depends upon whether the retailer has one, or more than one, places of business in Texas. *See* Tex. Tax Code § 321.203(b)-(d). If a retailer has a single place of business in Texas, the consummation rule in the Tax Code is very straightforward and simple:

> If a retailer has **only one place of business** in this state, **all** of the retailer's retail sales of taxable items are consummated at that place of business except as provided by Subsection (e).[5]

*Id.* § 321.203(b) (emphases added). All parties agree that Section 321.203(b) is unambiguous.[6] Thus, this appeal requires this Court's de novo review of whether the agency rule conflicts with the unambiguous statutory language of Sections 321.203(b) and 323.203 of the Tax Code.[7] Under the plain language of Section

---

[5] Subsection (e) addresses situations that are not relevant to Round Rock's case, such as sales by itinerant vendors. *See* Tex. Tax Code § 321.203(e).

[6] Although the Comptroller seems now to indirectly argue that Section 321.203 is ambiguous and in need of interpretation, *see* Comptroller Brief at 11-12, this position is unavailing and may not be raised for the first time on appeal. Because Section 321.203(b) is unambiguous there was no need for the trial court to do anything other than apply the plain meaning of the statutory text. *See TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). The Comptroller seems to inflate the role of the agency, asserting that deference should be given to the agency's interpretation of the statute, despite it being unambiguous. Comptroller Brief at 9, 11.

[7] Section 323.203 outlines the method for determining where a sale is consummated for the purpose of collecting county sales and use taxes. This sourcing framework for counties

21

321.203(b), all sales by a retailer with one place of business in Texas are consummated at that place of business. And because Rule 3.334 undoubtedly requires some such sales (an amount other than "all") to be considered consummated elsewhere, the rule clearly contravenes the Tax Code.

The Comptroller admits that Rule 3.334 will result in some sales for one-place-of-business retailers being consummated at a different location, ignoring the obvious issue of statutory conflict and spinning out a hypothetical scenario which it claims would be "an unreasonable reading of the statute that the Legislature could not have intended." Comptroller Brief at 21-22.[8] However, because the statute is unambiguous, the trial court was only required to apply the plain text of Section 321.203 to the language of the rule rather than address the Comptroller's hypothetical scenario, in which an unnamed retailer took certain actions under the pre-amendment version of Rule 3.334. To address such a scenario posed by the Comptroller would have resulted in an improper advisory opinion. Instead, the trial court compared the text of Tax Code Section 321.203, which provides clear guidance

---

mirrors that for municipal sales tax found in Section 321.203. *Compare* Tex. Tax Code § 321.203 *with id*. § 323.203. The same analysis applies to Section 323.203, and Round Rock incorporates that analysis by reference for this and all pertinent sections.

[8] The Comptroller attributes its hypothetical to Round Rock's "interpretation" of the statute. However, Round Rock has never asserted a hypothetical interpretation of Section 321.203 and instead has consistently cited the plain statutory language and asserted that "all" means "all." Round Rock also provided the Comptroller and the trial court with extensive information and the actual, real-world example of Texas retailer Dell Computer, which has one place of business in Round Rock and receives internet orders.

on how sales are consummated for retailers with one place of business, to determine whether Rule 3.334 contravenes the statute. As the trial court correctly determined, it does by requiring one-place-of-business retailers to consummate online sales at a location other than the retailer's one place of business.

## C.     Several sections of Rule 3.334 contravene the Tax Code

Rule 3.334 is quite confusing,[9] so Round Rock will highlight certain problematic portions of the rule, followed by more detailed analysis using the same briefing order as the Comptroller. The following provisions, working together, result in destination-sourcing of online orders, even for retailers with only one place of business in Texas.

| Subsection | Invalid Rule Language |
|---|---|
| (a)(9) | [Definition of "Fulfill"] <br><br> "To complete an order by transferring possession of a taxable item to a purchaser, or to ship or deliver a taxable item to a location designated by the purchaser." |
| (a)(18) | [within Definition of "Place of business of the seller"] <br><br> "The term does not include a computer server, Internet protocol address, domain name, website, or software application." |

---

[9] Rule 3.334 was amended and readopted multiple times during the pendency of this case, each time, in Round Rock's opinion, becoming more confusing. Therefore, Round Rock focused its arguments at trial on the four provisions discussed herein while still standing on its pleadings and all the challenges it made to Rule 3.334 in its entirety.

| (b)(5) | [within subsection (b)(5) "Determining the place of business of a seller"]<br><br>"A computer that operates an automated shopping cart software program is not 'an established outlet, office, or location,' and does not constitute a 'place of business of the seller.' A computer that operates an automated telephone ordering system is not 'an established outlet, office, or location,' and does not constitute a 'place of business of the seller.'" |
|---|---|
| (c) | [concluding sentence of the first paragraph of subsection (c)]<br><br>"The following rules, taken from Tax Code, §321.203 and §323.203, apply to all sellers engaged in business in Texas, regardless of whether they have no place of business in Texas, a single place of business in Texas, or multiple places of business in Texas." |

With the language above, the Comptroller laid the foundation to assert that because an internet or website order is received by a computer, it is not received at "a place of business."[10] Rule 3.334(c) goes on to expressly disregard the Tax Code's clear instruction that sales by a retailer with one place of business are treated

---

[10] Confoundingly, the Comptroller never explains how a retailer could calculate and collect sales tax if it did not "receive" the order due to the order being communicated via a computer. The Comptroller also never explains how a retailer would have the authority to collect sales tax if only a computer "receives" the order. Computers could not apply for or receive a sales tax permit from the Comptroller's office, a fact that was demonstrated at trial. Ex. RR-70; 8RR46-59. Despite this logical gap, the Comptroller nevertheless contends that the sentences highlighted above are necessary to effectuate the Legislature's intent for Tax Code Sections 321.203 and 323.203.

differently than sales by other retailers and are simply consummated at the place of business, instructing that:

> The following rules, taken from Tax Code, §321.203 and §323.203, **apply to all sellers engaged in business in Texas, regardless of whether they have** no place of business in Texas, **a single place of business** in Texas, or multiple places of business in Texas.

Rule 3.334(c) (emphases added). The rule then provides standards to determine where a sale is consummated, distinguishing between orders *received* at a place of business from those that are *not received* at a place of business. In the latter case, unless an order is "*fulfilled*" at the retailer's place of business, the sale is consummated wherever the order is shipped or delivered or where the buyer takes possession. Rule 3.334(c)(2). Therefore, Subsection (c) works together with the rule definitions of "fulfill" and "place of business" to create a conflict with the Tax Code's clear and straightforward scheme for determining where a sale by a single-place-of-business retailer is consummated.

By carving out online sales from being considered "received" at a retailer's place of business, the Comptroller forces retailers with one place of business in Texas to follow the myriad of "fulfilment" rules set out in Rule 3.334(c), resulting in some sales being consummated at locations other than a retailer's one place of business. This achieves destination-sourcing of internet sales, which was the Comptroller's policy agenda from the beginning. Because the rule amendments

achieving this result conflict with the plain language of Tax Code Section 321.203(b), they are unlawful and were properly enjoined by the trial court.

**1.      Rule 3.334(a)(9) Contravenes Existing Statutes [Definition of "Fulfill"]**

The trial court correctly found that Rule 3.334(a)(9) contravenes existing statutes by adding a definition at the agency level that has the effect of changing the Legislature's straightforward statutory scheme for determining where a sale is "consummated." Subsection (a)(9) of Rule 3.334 states:

> (9) Fulfill—To complete an order by transferring possession of a taxable item to a purchaser, or to ship or deliver a taxable item to a location designated by the purchaser. The term does not include receiving or tracking an order, determining shipping costs, managing inventory, or other activities that do not involve the transfer, shipment, or delivery of a taxable item to the purchaser or a location designated by the purchaser.

As the Comptroller concedes, the Tax Code does not contain the concept or definition of "fulfill" or "fulfillment." Comptroller Brief at 13. Such terms are superfluous as they relate to one-place-of-business retailers, who are statutorily directed to consummate all sales at the location of their single place of business. Indeed, Section 321.203(a) of the Tax Code provides that:

> A sale of a taxable item occurs within the municipality in which the sale is consummated. A sale is consummated as provided by this section **regardless of the place where transfer of title or possession occurs.**

Tex. Tax Code § 321.203(a) (emphasis added).

26

With this language, the Legislature makes it clear that where the transfer of title or possession of the taxable item occurs does not matter. *See id*. Yet, the Comptroller asserts that Rule 3.334(a)(9) provides "examples of specific acts that do not qualify as fulfilling an order and *thus will not qualify as consummation* under Tax Code section 321.203." Comptroller Brief at 13 (emphasis added). This shows that the Comptroller is trying to equate "fulfilment" with "consummation," at least for certain kinds of sales, thus creating a statutory conflict.

Any attempt by the Comptroller to substitute its definition of "fulfill" in place of "consummation" in the Tax Code is improper overreach by the agency. The Comptroller asserts, without supporting authority or analysis, that "[t]he Comptroller's definition of fulfill is needed to properly administer the statutory language and is based on the Comptroller's assessment of the clarity needed to administer the controlling statutory provisions regarding receipt of orders." Comptroller Brief at 14. But there is no need to clarify the very clear expression of legislative intent as to single-place-of-business retailers, and the Comptroller did not show that it was somehow unable to administer the statutory language before adding its definition of "fulfill."

## 2. Rule 3.334(a)(18) Contravenes Specific Statutory Language [Definition of "Place of Business"]

The trial court also correctly found that Rule 3.334(a)(18), defining "place of business," contravenes specific statutory language set forth in the Tax Code.

27

The Tax Code defines "Place of Business" as:

> an established outlet, office, or location operated by the retailer or the retailer's agent or employee for the purpose of receiving orders for taxable items and includes any location at which three or more orders are received by the retailer during a calendar year. A warehouse, storage yard, or manufacturing plant is not a "place of business of the retailer" unless at least three orders are received by the retailer during the calendar year at the warehouse, storage yard, or manufacturing plant.

Tex. Tax Code § 321.002(a)(3)(A). The Comptroller has never asserted that that definition is ambiguous or deficient, and yet, subsection (a)(18) of Rule 3.334 now states:

> (18) **Place of business of the seller - general definition**—A place of business of the seller must be an established outlet, office, or location operated by a seller for the purpose of receiving orders for taxable items from persons other than employees, independent contractors, and natural persons affiliated with the seller. An "established outlet, office, or location" usually requires staffing by one or more sales personnel. **The term does not include a computer server, Internet protocol address, domain name, website, or software application.** The "purpose" element of the definition may be established by proof that the sales personnel of the seller receive three or more orders for taxable items at the facility during the calendar year. Additional criteria for determining when a location is a place of business of the seller are provided in subsection (b) of this section . . . .

Rule 3.334(a)(18) (emphases added). By defining "place of business of the seller" as not including "a computer server, Internet protocol address, domain name, website, or software application," the Comptroller lays the groundwork for shifting online sales to destination-source taxation, mandating that online sales through a

28

website or shopping cart software are no longer considered "received" at a "place of business."

Ironically, the items within the Comptroller's definitional exclusion—"computer server, Internet protocol address, domain name, website, or software application"—are generally considered assets owned by a business, although none of those items, standing alone, could receive a sales tax permit.[11] But carving them out of its definition of "place of business" is necessary for the Comptroller to reach the desired result of a different consummation scheme for online sales communicated via the internet, a computer server, or website, regardless of whether the retailer has only one place of business.

This shift to determining what is or is not a place of business in Texas based on *the method of communicating sales orders* is a complete reversal in position for the Comptroller, which prior to the attempted 2020 amendments, treated all online

---

[11] Moreover, the amendments excluding "a computer server, Internet protocol address, domain name, website, or software application" from the definition of "Place of business" also conflicts with the definition of "Internet" found in Section 151.00393:

> Sec. 151.00393. INTERNET. "Internet" means collectively the myriad of computer and telecommunications facilities, including equipment and operating software, that comprise the interconnected worldwide network of networks that employ the Transmission Control Protocol/Internet Protocol, or any predecessor or successor protocols to the protocol, **to communicate information of all kinds** by wire or radio.

Tex. Tax Code § 151.00393 (emphasis added). The Comptroller's effort to isolate certain methods of communication and treat them differently from others, such as telecommunication facilities or VoIP, results in rule language that contravenes the language and framework of the Tax Code.

and internet orders placed with retailers with one place of business in the state as being received at the retailer's place of business, consistent with Section 321.203.

### 3. Rule 3.334(b)(5) Contravenes Specific Statutory Language ["A Computer is Not a Place of Business" Proxy for Internet Orders]

The trial court correctly determined that Rule 3.334(b)(5) contravenes specific statutory language set forth in the Tax Code. Subsection (b)(5) of Rule 3.334 states:

(b) **Determining the place of business of a seller**.

\*\*\*

(5) A facility without sales personnel is usually not a "place of business of the seller." A vending machine is not "an established outlet, office, or location," and does not constitute a "place of business of the seller." Instead, a vending machine sale is treated as a sale by an itinerant vendor. . . . However, a walk-in retail outlet with a stock of goods available for immediate purchase through a cashier-less point of sale terminal at the outlet would be "an established outlet, office, or location" so as to constitute a "place of business of the seller" even though sales personnel are not required for every sale. **A computer that operates an automated shopping cart software program is not "an established outlet, office, or location," and does not constitute a "place of business of the seller." A computer that operates an automated telephone ordering system is not "an established outlet, office, or location," and does not constitute a "place of business of the seller."**

Rule 3.334(b)(5) (emphasis added). Subsection (b)(5), when read in conjunction with the rest of Rule 3.334, presents an obvious conflict with Section 321.203. The effect of Rule 3.334(b)(5) is as follows: If an order for a taxable item is communicated to a Texas retailer via a computer that operates shopping cart

30

software, then that order is not received at the retailer's "place of business," even if the retailer has only one place of business in Texas. Therefore, the rule instructs that a taxable sale is no longer consummated at that retailer's one "place of business" in direct contravention of express statutory language and authority, as well as the overall statutory framework of the Tax Code. Subsection (b)(5) of the rule, working together with the agency definitions, results in a different sourcing framework for online orders, even for retailers with only one place of business in the state.

Subsection (b)(5) also makes a distinction between orders that are received by sales personnel and orders that are not, whereas the Tax Code does not, instead providing that when a retailer has only one place of business in this state, *all* of the retailer's sales of taxable items are consummated at that place of business without distinction or differentiation between orders received via computers, servers, software, or sales personnel. *See* Tex. Tax Code § 321.203(b).

In a relevant case from the Third Court of Appeals, *Combs v. City of Webster*, 311 S.W.3d 85, 95 (Tex. App.—Austin 2009, pet. denied), the court specifically considered the statutory scheme under Texas Tax Code Chapter 321. The court stated that, "[f]or purposes of local sales tax, the sale of a taxable item occurs within the municipality in which the sale is consummated." *Id. (*citing Tex. Tax Code § 321.203(a)). The court also noted that "[g]enerally, the location at which a sale is consummated is a 'place of business' of the retailer." *Id.* (citing Tex. Tax Code

§ 321.203(b)-(d)). The parties in that case did not dispute that the retail store locations were places of business, and the court concluded that under Section 321.203, the sales were consummated at the retail store location in the city of Webster, which was "the retailer's place of business in this state where the order is received." *Id.* (*citing* Tex. Gov't Code § 321.203(d)(1)).

The court in *Webster* specifically referred to the following statements made by the Comptroller about internet orders:

> According to statements by the Comptroller in the documents attached to the plea to the jurisdiction and appellees' responsive filings, the three orders required for a distribution center to be considered a place of business under the tax code **may be received at the distribution center itself, or by any of the following . . .** (3) a showroom or clearance center with regular hours of operation open to the public for sales of merchandise; or (4) **an Internet computer system receiving orders**.

*Id.* at 97 (emphases added). The Comptroller's assertion in *Webster* that orders may be received at "an Internet computer system receiving orders" is exactly the opposite of the Comptroller's current position as reflected in Rule 3.334. Further, Rule 3.334 directly contradicts voluminous prior statements, published guidelines, periodicals, and actions of the Comptroller, which, until recently, consistently treated online orders as being received at a place of business and consummated pursuant to Section 321.203. The Comptroller's change of position, given that there have been no changes in the constitution, laws, or judicial interpretations relating to Section

32

321.203, demonstrates the extent to which the Comptroller has exceeded his authority. *See* Tex. Tax Code § 111.002(a).

The awkward language of subsection (b)(5) is the foundation of the Comptroller's attempted end-run around the origin-sourcing statutory scheme and plain language of the Tax Code. In addition, the Comptroller's arbitrary method-of-communication test will allow for inconsistent applications of the rule. For example, if a buyer selects a product and places an order using a retailer's shopping website and then also calls to give credit card information by phone, it would be impossible for the retailer to know how to source the sale. In addition to harming Round Rock, this rule will be very confusing for retailers across Texas to understand, imposing compliance burdens, conditions, or restrictions in excess of or inconsistent with the relevant statutory provisions.

### 4. Rule 3.334(c) Contravenes Specific Statutory Language and the Tax Code's Statutory Scheme

The trial court correctly determined that Rule 3.334(c) contravenes specific statutory language. Rule 3.334 states, with emphasis added:

> (c) Local sales tax – Consummation of sale – determining the local taxing jurisdictions to which sales tax is due. Except for the special rules applicable to remote sellers in subsection (i)(3) of this section, direct payment permit purchases in subsection (j) of this section, and certain taxable items, including taxable items sold by a marketplace provider, as provided in subsection (k) of this section, each sale of a taxable item is consummated at the location indicated by the provisions of this subsection. **The following rules, taken from Tax Code § 321.203 and § 323.203, apply to all sellers engaged in business in**

**this state, regardless of whether they have no place of business in Texas, a single place of business in Texas, or multiple places of business in the state**.

The emphasized sentence above highlights the head-to-head conflict between Rule 3.334 and the Tax Code. Section 321.203 of the Tax Code contains words carefully chosen by the Legislature to explain where sales of taxable items are consummated. Rule 3.334(b)(5)'s provision that online orders are not received at "a place of business" has the effect of forcing all retailers, including those with only one place of business in the state, into following the complicated consummation rules found in subsection (c).[12]

The Comptroller tacitly admits that Rule 3.334(c) conflicts with Section 321.203(b) but asserts in the 2024 Order that the statute cannot really mean "all" sales for retailers with one place of business. The Comptroller states that "Tax Code, § 321.203(b) *cannot reasonably be interpreted to mean that a sale is consummated at the seller's single place of business in Texas*, even if that place of business did not receive the order from the customer, did not fulfill the order from the customer, and was not the location where the order was delivered." Ex. RR-28 at 4805 (emphasis added). According to the Comptroller, the Legislature could not have intended that

---

[12] Although the prefatory statement within subsection (c) of Rule 3.334 states that the rules were "taken from Tax Code § 321.203," that statement is demonstrably false. Instead, the rule conflicts with the Tax Code by dictating where a sale is consummated, ignoring statutory language to the contrary.

its plain language be followed without an additional analysis regarding *where* an order was received, fulfilled, and delivered. This is patently inconsistent with the Legislature's intent as clearly expressed in the Tax Code.

Furthermore, subsections (c)(1) and (2) distinguish between: orders received at a place of business in Texas and placed in person; orders received and fulfilled at a retailer's place of business in Texas but not placed in person; orders received at the retailer's place of business in Texas but not placed in person and not fulfilled at the seller's place of business in Texas; orders not received at a retailer's place of business in Texas but fulfilled at such a location; orders not received or fulfilled at a retailer's place of business but fulfilled in Texas; and orders not received or fulfilled at a retailer's place of business and not fulfilled in Texas. Rule 3.334(c)(1), (2). These labyrinthine consummation rules along with the confusing definitions of "fulfill" and "place of business" are now imposed on retailers with only one place of business in Texas, in clear violation of Section 321.203's provision that "[i]f a retailer has only one place of business in this state, all of the retailer's retail sales of taxable items are consummated at that place of business."  Tex. Tax Code § 321.203(b).

### a. Rule 3.334(c) [(c)(1) and (c)(2) inclusive] Contravenes the Statutory Scheme

The trial court correctly found that Rule 3.334(c) also contravenes the statutory scheme for determining where a sale is consummated. As demonstrated

above, when the Comptroller's rule amendments are compared to the overall structure of the Tax Code Rule 3.334, there is an irreconcilable conflict with a controlling statute.

The Comptroller notes that the trial court did not explain why it determined that Rule 3.334(c) violated both specific statutory language and the statutory scheme. Comptroller Brief at 22. However, the Comptroller did not request any such explanation or otherwise inform the trial court that it was confused as to that issue.[13] Moreover, although the Comptroller suggests a lack of relevant Texas caselaw differentiating between when a rule contravenes specific statutory language and when a rule contravenes a statutory scheme, that seems to be a distinction without a difference. Instead, the trial court's determinations that the rule violated both the specific statutes and the overall tax scheme fit neatly into the approach a court should take when conducting a rule challenge: "To establish [a] rule's facial invalidity, a challenger must show that the rule: (1) *contravenes specific statutory language*; (2) *runs counter to the general objectives* of the statute; or (3) imposes additional burdens, conditions, or restrictions in excess of or inconsistent with the relevant statutory provisions." *Moers v. Harris Cty. Appraisal Dist.*, 469 S.W.3d 655, 664 (Tex. App.—Houston [1st Dist.] 2015, pet. denied) (quoting *Office of Pub. Util.*

---

[13] The Comptroller did not request findings of fact or conclusions of law on any issue after the trial court issued its Final Judgment.

36

*Counsel v. Pub. Util. Comm'n*, 131 S.W.3d 314, 321 (Tex. App.—Austin 2004, pet. denied)) (emphasis added).

When examining the statutory scheme for consummation set out in the Tax Code, it is clear that the Legislature chose to treat retailers with only one place of business in Texas differently than other retailers. If that one place of business is located within a municipality, all sales are consummated within that municipality, and "[a] sale is consummated as provided by this section regardless of where transfer of title or possession occurs." Tex. Tax Code § 321.203(a), (b).

Throughout this case, the Comptroller has incorrectly asserted that Round Rock seeks "special treatment" for one-place-of-business retailers. Comptroller Brief at 20-21. However, the fact is that the Tax Code explicitly and unambiguously treats retailers with one place of business in the state differently than other retailers.

### b. The Trial Court Properly Enjoined All of Subsection (c) [Severability]

The Comptroller argues that the trial court erred in invalidating all of subsection (c) of Rule 3.334 because Round Rock primarily focused its arguments on the final problematic sentence in the preface paragraph of subsection (c).

It is true that Round Rock took particular issue with the sentence highlighted below:

Local sales tax - Consummation of sale - determining the local taxing jurisdiction to which sales tax is due. Except for the special rules applicable to remote sellers in subsection (i)(3) of this section, direct payment permit purchases in subsection (j) of this section, and certain taxable items, including taxable items sold by a marketplace provider, as provided in subsection (k) of this section, each sale of a taxable item is consummated at the location indicated by the provisions of this subsection. **The following rules, taken from Tax Code, §321.203 and §323.203, apply to all sellers engaged in business in Texas, regardless of whether they have no place of business in Texas, a single place of business in Texas, or multiple places of business in Texas**.

Rule 3.334(c) (emphases added).

After that prefatory paragraph, subsection (c) goes on to explain in sub-subsections (1) through (7) where an order is considered to be consummated for sales-tax purposes, distinguishing several different situations as noted above. Because Round Rock specifically complained of that emphasized sentence and the trial court invalidated subsection (c) in its entirety, including all the sub-subsections explaining where a sale is considered consummated, the Comptroller argues that the trial court improperly overturned language that had not been challenged. However, it is false that Round Rock limited its challenge to that one sentence of subsection (c). In its live pleadings, Round Rock challenged the entirety of subsection (c), specifically noting that subsection (c)(1) "continu[ed] and add[ed] to the conflict

with statutory authority" and arguing that both subsections (c)(1) and (c)(2) conflicted with the Tax Code. CR2474-2478, 2488, 2490-2493, 2497.

Even if Round Rock had only explicitly challenged the prefatory paragraph, the trial court had to consider whether that paragraph could be severed from the rest of subsection (c), by asking (i) whether the function of the rule as a whole would be impaired without the invalid part of the rule and (ii) whether there was there any indication that the Comptroller would not have adopted the rule without the invalid part, and "[i]f the answer to either query [was] 'yes,' in the court's view, then severance [was] not justified and the entire rule must fall." *Sw. Bell Tel. Co. v. Pub. Util. Comm'n*, 888 S.W.2d 921, 929 (Tex. App.—Austin 1994, writ denied); *Tex. Dep't of Banking v. Restland Funeral Home, Inc.*, 847 S.W.2d 680, 683 (Tex. App.—Austin 1993, no writ) (citing *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 295 (1988)); *see Bd. of Pilot Comm'rs for the Ports of Brazoria Cty. v. Gonzales*, NO. 14-99-00397-CV, 2000 WL 977408, at *2 (Tex. App.—Houston [14th Dist.] May 18, 2000, pet. denied) (not designated for publication) (applying test to administrative agency's order).

The trial court could reasonably have determined that the prefatory paragraph, explaining exactly when the following rules applied, was a necessary part of the subsection and that the Comptroller would not have written it without the invalidated language. Further, because the trial court had determined that the main portion of

subsection (c) contravened statutory language, it necessarily had to invalidate the rest of the subsection, which gave specifics about the way sales tax is calculated in various kinds of sales, and which changed single-place-of-business sales from the Legislature's intended origin-sourcing model to the Comptroller's preferred destination-sourcing model. *See* Tex. Tax Code § 321.203(b). The trial court therefore did not err in invalidating the entirety of subsection (c).

### D. The Comptroller Exceeded Statutory Authority

The Comptroller's authority to adopt or amend rules is set forth in Texas Tax Code Section 111.002. A close review of the preamble to Rule 3.334, the Comptroller's public statements about the rule amendments, and the full text of Section 111.002(a) demonstrate the improper use of the Comptroller's rulemaking authority. Section 111.002(a) reads in full as follows:

> The comptroller may adopt rules that **do not conflict with the laws of this state** or the constitution of this state or the United States for the enforcement of the provisions of **this title** and the collection of taxes and other revenues under **this title**. In addition to the discretion to adopt, repeal, or amend such rules permitted under the constitution and laws of this state and under the common law, the comptroller may adopt, repeal, or amend such rules to reflect changes in the power of this state to collect taxes and enforce the provisions of this title **due to changes in the constitution or laws of the United States and judicial interpretations thereof**.

*Id.* § 111.002(a) (emphases added). The Comptroller's office has been receiving sales tax collections for online, website, and internet sales for decades, yet has never taken the position that the sourcing of such sales was so complex or devoid of clarity

40

as to require sweeping changes to its rules. Despite the Comptroller's passing reference to "the realities of online orders," Comptroller Brief at 19, there is no actual information, study, or data put forth by the Comptroller to support such a general assertion, much less to tie that assertion to a legal and rational basis for a need to clarify the Tax Code or drastically change Texas's origin-sourcing framework for single-place-of-business retailers. Instead, the Comptroller is simply advancing a policy goal of reallocating sales tax revenues to destination cities, without a change in the law or judicial interpretation necessitating such change.

In addition, the reference to "this title" in Tax Code Section 111.002(a) means that the Comptroller has authority over the Tax Code, not other state statutes that fall outside the Comptroller's purview, such as Chapter 380 agreements, which are specifically governed by the Local Government Code. Yet, then-Comptroller Hegar admitted to Round Rock in face-to-face meetings as well as to the public in newspaper articles that the reason for the rule amendments was to thwart Chapter 380 agreements. It is improper for the Comptroller to use the rulemaking process to effectuate changes in statutes over which the agency has no authority to administer.

E.     Conclusion

The Comptroller bases much of its analysis on a contrived scenario in which a hypothetical taxpayer would source sales tax to a location extremely attenuated from the retailer in an effort to game the system. Comptroller Brief at 21-22. As a

41

preliminary matter, the Comptroller lacks authority to adopt rules based on purely hypothetical problems. *See* Tex. Tax Code § 111.002(a). Regardless, although the Comptroller ignores them, the Tax Code already provides the Comptroller with the tools to stop a retailer from manipulating what constitutes a place of business:

> (B) An outlet, office, facility, or any location that contracts with a retail or commercial business to process for that business invoices, purchase orders, bills of lading, or other equivalent records onto which sales tax is added, including an office operated for the purpose of buying and selling taxable goods to be used or consumed by the retail or commercial business, is not a "place of business of the retailer" **if the comptroller determines that the outlet, office, facility, or location functions or exists to avoid the tax legally due under this chapter or exists solely to rebate a portion of the tax imposed by this chapter to the contracting business**.

*Id.* § 321.002(a)(3)(B) (emphasis added).

Further, the Comptroller has never stated that it believed Round Rock's Chapter 380 agreement with Dell Computer is a sham, instead simply asserting that the agreement was "too long." 8RR64. The Comptroller's attempted rulemaking amounts to agency meddling and legislation-by-rulemaking, which exceeds the Comptroller's authority. Therefore, Round Rock requests that this Court affirm the trial court's judgment on the grounds of statutory contravention.

**II.** **The Comptroller did not substantially comply with the APA notice requirements.**

    **A.** **The APA sets forth "minimum standards" of agency rulemaking practice and procedure.**

The APA provides "minimum standards" of uniform practice and procedure for state agencies. Tex. Gov't Code § 2001.001(1). Those minimum standards are intended to provide for "adequate and proper public notice of proposed state agency rules and state agency actions" and "public participation in the rulemaking process." *See id.* §§ 2001.001(1) & 2002.002. To that end, the Legislature adopted Government Code Sections 2001.021 through 2001.033 to establish a system of informal or "notice-and-comment" rulemaking.

A state agency is required to publish a notice in the *Texas Register* at least 30 days before it adopts a rule. *Id.* § 2001.023. That notice must include certain information, such as the following:

- A fiscal note that states the estimated loss in revenue to local governments as a result of enforcing or administering the rule, *id.* § 2001.024(a)(4)(C);

- A note that states the probable economic cost to persons required to comply with the rule, *id.* § 2001.024(a)(5), and

- Any other statement required by law. *Id*. § 2001.024(a)(8).

The economic impact statement and regulatory flexibility analysis mandated by Government Code Section 2006.002 are "other statement[s] required by law," which also must be included in a notice of proposed rulemaking. *Id.* § 2006.002(d); *Unified Loans,* 955 S.W.2d at 651.

Section 2006.002(c) provides that:

Before adopting a rule that may have an adverse economic effect on small businesses or rural communities, as applicable, a state agency shall prepare:

(1)    an economic impact statement that estimates the number of small businesses or rural communities subject to the proposed rule, projects the economic impact of the rule on small businesses or rural communities, and describes alternative methods of achieving the purpose of the proposed rule; and

(2)    a regulatory flexibility analysis that includes the agency's consideration of alternative methods of achieving the purpose of the proposed rule.

Tex. Gov't Code § 2006.002(c).

The APA notice requirements are mandatory, not optional at the discretion of the agency, and an agency rule that is not adopted in substantial compliance with APA procedures is voidable. *Id.* § 2001.035(a). An agency action substantially complies with an APA procedural requirement only if that action "(1) accomplishes the legislative objectives underlying the requirement and (2) comes fairly within the character and scope of each of the statute's requirements in specific and unambiguous terms." *Nat'l Ass'n of Indep. Ins. v. Tex. Dep't of Ins.*, 925 S.W.2d

44

667, 669 (Tex. 1996) ("*NAII*"); *Methodist Hosps. of Dall. v. Tex. Indus. Acc. Bd.*, 798 S.W.2d 651, 654 (Tex. App.—Austin 1990, writ dism'd w.o.j.); *see also Tex. Shrimp Ass'n v. Tex. Parks & Wildlife Dep't*, No. 03-04-00788-CV, 2005 WL 1787453, at *2 (Tex. App.—Austin July 27, 2005, no pet.) (mem. op.) ("Substantial compliance with a statutory requirement contemplates acts that secure the legislative objectives while coming fairly within the character and scope of each action or thing required in concise, specific, and unambiguous terms.").

The Third Court of Appeals has explained that the APA's notice provisions, Sections 2001.024 and 2006.002, "have two objectives." *Unified Loans*, 955 S.W.2d at 652. The first objective is for the public "to obtain . . . an objective assessment of the agency's proposed action" "as early as possible in the rulemaking proceeding." *Id.* The public obtains that objective assessment by "forcing [the agency] to consider, in detail and in orchestration, the various factors named in the statute . . . ." *Id.*

"The second objective is to afford adequate notice." *Id.* Adequate notice is important because "interested persons might comment intelligently on the proposed rules" and "the agency might exercise its responsibilities intelligently." *Id.* Those responsibilities include the following: (i) "arriving at the contents of the rule as finally adopted," (ii) "in stating reasons for and against adoption, and" (iii) "in formulating the required contents of the adopting order, including a 'reasoned justification' for the rule." *Id.*

**B. The fiscal impact statements included in the 2024 Notice were inadequate.**

The APA requires rule notices to include, among other things, (1) the estimated reduction in revenue to local governments; (2) the probable economic costs of the public; and (3) an economic impact statement and regulatory flexibility analysis. Tex. Gov't Code §§ 2001.024(a)(4)(C), (a)(5), (a)(8), 2006.002(c); *Unified Loans*, 955 S.W.2d at 651.

The entire discussion of the potential fiscal impact of the new rule on local government revenue included in the 2024 Notice is as follows:

> Change in sourcing of transactions subject to local sales taxation **could result** in net change in sales tax revenue of local taxing authorities generally, with the net change quite significant for some jurisdictions. Most, but not all, reductions in taxable transactions sourced to some jurisdictions would be increases in taxable transactions sourced to other jurisdictions. But to the extent that transactions previously sourced within an incorporated municipality would be sourced to an unincorporated area without a cumulative local tax rate levied by municipal (pursuant to a limited purpose annexation agreement), county, and/or special purpose taxing authorities commensurate with the cumulative local tax rate levied by the municipal, county, and/or special purpose taxing authorities applicable where the transactions were formerly sourced, there would be a reduction in aggregate local sales tax levies and consequent reduction in state service charge revenues under §§ 321.503, 322.303, and 323.503, Tax Code.
>
> For reasons further discussed, reliable estimates of net changes in revenue by individual jurisdictions for the 1,759 local sales taxing jurisdictions that might stem from compliance with the rule **cannot feasibly be produced** by the comptroller.

Ex. RR-26 at 2443 (emphases added).

46

The Comptroller followed that discussion with an analysis of estimates various parties provided to the Comptroller after this lawsuit was filed. Ex. RR-26 at 2443-2446. Using the data from those estimates, with slight modifications, the Comptroller concluded that the rule amendments could result in a "$28.5 million reduction in aggregate local tax levies." Ex. RR-26 at 2447. The Comptroller, however, included the following disclaimer with that conclusion:

> [T]he comptroller has not been provided with sufficient information to verify the estimates, and the data from the estimates cannot be extrapolated to other local tax jurisdictions.

Ex. RR-26 at 2447.

The Comptroller included similar statements in the 2024 Notice regarding the probable compliance costs and effects on small businesses:

- Compliance costs: "There **may be additional economic costs** to a person required to comply with the rule."

- Effects on small businesses: "[T]he comptroller **does not have sufficient data** on the business operations or each business to identify and quantify the businesses and transactions that might be affected, and the positive or negative revenue impact on each tax jurisdiction."

Ex. RR-26 at 2447 (emphases added).

## C. The Comptroller did not substantially comply with the APA requirement to estimate probable compliance costs.

The Comptroller argues in its brief that the trial court erred because the 2024 Notice "substantially complied with both the Fiscal Note and Adverse Economic Effect Notice." Comptroller Brief at 25. The Comptroller also complains that the

47

trial court "did not specify which specific statutes the Comptroller violated." Comptroller Brief at 25. As a result, the Comptroller limited its appellant issues to the sufficiency of its Fiscal Note and Adverse Economic Effect Notice, citing the parties' trial briefs as support. Comptroller Brief at 25.

Round Rock, however, also asserted at trial that the Comptroller did not substantially comply with the APA requirement to estimate probable compliance costs to the public. CR2635-2637; *see* Tex. Gov't Code § 2001.024. In fact, the portion of Round Rock's trial brief the Comptroller cites is included in the section titled: "Even after being ordered to do so by the Court, the Comptroller did not estimate the loss in revenue to local governments *or the cost to comply with the rule amendments*." CR2635 (emphasis added). Further, the specific page the Comptroller cites contains an explanation of the APA requirement to estimate probable compliance costs and a citation to Government Code Section 2001.024(a)(5). CR2636.

Accordingly, the Comptroller has failed to rebut all the notice challenges asserted by Round Rock, and the Comptroller's failure to comply with the probable-compliance-costs requirement alone invalidates Rule 3.334. *See* Tex. Gov't Code § 2001.035(a).

48

**D.** **The Comptroller did not substantially comply with the APA requirement to estimate revenue loss to local governments.**

An agency action substantially complies with the APA if it "accomplishes the legislative objectives underlying the requirement." *NAII*, 925 S.W.2d at 669. The notice procedures of the APA have two objectives: (i) "forc[e] [the agency] to consider, in detail and in orchestration, the various factors named in the statute,"; and (ii) "afford adequate notice." *Unified Loans*, 955 S.W.2d at 652.

The Comptroller argues that it substantially complied with the APA requirement to estimate the loss in revenue to local governments by including the following in the 2024 Notice: (i) notice of potential loss of revenue and fiscal impact; (ii) information the Comptroller would need to provide a comprehensive analysis; and (iii) its claimed reasons why it was unable to provide a detailed analysis. Comptroller Brief at 29. The Comptroller is wrong as a matter of law and fact.

First, the Comptroller is wrong that it is excused from APA procedural requirements because those requirements might be difficult to comply with. The APA provides "minimum standards" of practice and procedure for state agencies. Tex. Gov't Code § 2001.001(1). A rule that is not adopted in substantial compliance with the APA is voidable. *Id.* § 2001.035(a). Accordingly, if the Comptroller cannot substantially comply with the APA procedural requirements, then it may not issue rules.

Further, nothing in the APA's statutory language indicates that an agency may simply decide that including a useful and informational fiscal note is just "too hard." *See, e.g.*, *RWE Renewables Ams., LLC v. Pub. Util. Comm'n of Tex.*, 669 S.W.3d 566, 582 (Tex. App.—Austin 2023), *vacated, dism'd*, 691 S.W.3d 484 (Tex. 2024) (rejecting agency's argument that requiring it to comply with APA rulemaking procedures "would be a 'massive waste of precious [agency] resources,'" and stating that although APA process "undoubtedly take[s] some time and effort," "[t]he importance of the APA requirements cannot be overstated" because process "'assures notice to the public and affected persons and an opportunity to be heard on matters that affect them'"); *Unified Loans*, 955 S.W.2d at 652-54 (refusing to accept agency's vague statement about effects of rule on small businesses, despite agency's assertion that there was "no information reasonably available from which to estimate a specific cost amount"; court stated that although agency was not required to include in notice "every piece of information [it] relied upon in reaching [its] conclusions," it was required to include "some basis in order that interested persons might know and confront that basis in a meaningful way in their comments" because without such information, the agency's "invitation to comment on the proposed rules was a masquerade, a disingenuous and counterfeit compliance with the invitation to comment required by [the] APA").

Round Rock agrees with the Comptroller that the APA allows for substantial compliance rather than exacting, precise compliance, but does not agree that it allows an agency to opt out of or gloss over a requirement by simply stating that the proposed rule's fiscal effect "might be significant" and shrugging its shoulders as to how significant it might be. *See, e.g.*, Tex. Gov't Code §§ 2001.021-.042. In other words, Round Rock does not argue that the Comptroller should have provided a definitive and exact amount of revenue that would be lost to Round Rock, the other plaintiff cities, and other local taxing jurisdictions. Round Rock does argue that the Comptroller was required to do something more than virtually nothing. Such abdication of responsibility by an agency cannot equate to substantial compliance.

Second, the Comptroller has not established that it lacked the information necessary to provide a more specific fiscal impact statement. If, as here, the parties to a lawsuit do not request findings of fact following a bench trial, all findings necessary to support the trial court's judgment are implied, although if a reporter's record is filed, those implied findings may be challenged on sufficiency grounds in the same manner as a jury's findings. *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 4714, 480 (Tex. 2017) (quoting *Sixth RMA Partners, L.P. v. Sibley*, 111 S.W.3d 46, 52 (Tex. 2003)). "When an appellant does not request or file findings and conclusions by the trial court, the appellate court presumes the trial court found all fact questions in support of its judgment, and the reviewing court must affirm that

51

judgment on any legal theory finding support in the pleadings and evidence." *Ikb Indus. v. Pro-Line Corp.*, 938 S.W.2d 440, 445 (Tex. 1997).

The trial court found that the Comptroller failed to substantially comply with the notice requirements of the APA. CR2798. The implied findings supporting the judgment include a finding that it was possible for the Comptroller to provide a more detailed fiscal impact statement, but that it did not do so. The trial court could reasonably have concluded that the face of the 2024 Notice did not satisfy the Legislative objectives of the APA notice procedures: "forcing [the agency] to consider, in detail and in orchestration, the various factors named in the statute" and affording "adequate notice." *See Unified Loans*, 955 S.W.2d at 652.

Third, the Comptroller's "notice of potential loss of revenue and fiscal impact" was really no notice at all:

> Change in sourcing of transactions subject to local sales taxation **could result** in net change in sales tax revenue of local taxing entities generally, with the net change quite significant for some jurisdictions.

Ex. RR-26 at 2443 (emphasis added). The phrase "could result" would not provide a local taxing jurisdiction with any actual information or tools to plan for a change in sales tax revenue and related budgeting. Further, local taxing entities could not readily understand how the Comptroller quantifies or defines the terms "net change" and "quite significant" as used in the notice. The transparency and fair-notice rationales underpinning the APA should not allow a government agency to provide

only an amorphous and vague description of the effect of its own rule, especially when the information would only be known by the agency itself. 8RR6-54. The trial court could reasonably have found that the Comptroller did not consider or disclose the significant and harmful revenue impact on cities when it developed the rule, and that interested parties were not given adequate notice.

**E.      The Comptroller did not substantially comply with APA notice requirements related to small businesses.**

The first requirement of an economic impact statement is that it "estimates the number of small businesses or rural communities subject to the proposed rule." Tex. Gov't Code § 2006.002(c)(1). The Comptroller stated in its brief that "it could not identify and quantify the businesses and transactions that might be affected or the positive or negative revenue impact on each tax jurisdiction." Comptroller Brief at 32.

The Comptroller did not substantially comply with the APA notice requirements that concern small businesses when it opted to not "estimate the number of small businesses . . . subject to the proposed rule." Comptroller Brief at 32. The Comptroller also did not "project[ ] the economic impact of the rule on small businesses." Comptroller Brief at 32. The trial court therefore did not err in finding that the Comptroller did not substantially comply with the APA notice requirements.

## F. Conclusion

The Texas Supreme Court described the important role courts play in the rulemaking process as follows:

> Judicial review of administrative rulemaking is especially important because, although the executive and legislative branches may serve as political checks on the consequences of administrative rulemaking, the judiciary is assigned the *process* of rulemaking. Given the vast power allocated to governmental agencies in the modern administrative state, and the broad discretion ordinarily afforded those agencies, judicial oversight of the rulemaking process represents an important check on government power that might otherwise exist without meaningful limits."

*NAII*, 925 S.W.2d at 670 (internal citations omitted; italics in original).

"[S]ubstantial compliance requires more than a faint effort or hollow rhetoric." *RWE Renewables*, 669 S.W.3d at 581; *see also Nat'l Ass'n of Chain Drug Stores, Inc. v. Young,* No. 07-23-00175-CV, 2024 WL 2971681, at *7 (Tex. App.—Amarillo June 12, 2024, pet. denied) ("An agency must substantially comply with the APA rulemaking requirements and constitute more than a 'faint effort or hollow rhetoric.'") (quoting *RWE* Renewables, 669 S.W.3d at 581). It is hard to imagine a standard for substantial compliance that is lower than the one advocated by the Comptroller. The 2024 Notice's discussion regarding the fiscal impacts of the proposed rule was vague, argumentative, and accompanied by disclaimers. In fact, the discussion was so vague that it arguably could be used for any rule the Comptroller proposes. That discussion does not substantially comply with the APA notice requirements because it does not give interested parties "adequate notice" or

54

show the Comptroller "consider[ed], in detail and in orchestration, the various factors named in the statute." *See Unified Loans*, 955 S.W.2d at 652.

## III. The Comptroller did not substantially comply with the APA's reasoned justification requirement.

The APA's reasoned-justification requirement is intended to ensure that an agency fully considers all comments submitted by interested parties and that the public learns the agency's factual basis and rationale for a rule. *Farm & Ranch Freedom All. v. Tex. Dep't of Agric.*, No. 03-23-00459-CV, 2025 WL 994190, at *6 (Tex. App.—Austin Apr. 3, 2025, no pet.) (mem. op.); *Reliant Energy v. Pub. Util. Comm'n of Tex.*, 62 S.W.3d 833, 841 (Tex. App.—Austin 2001, no pet.). Therefore, an agency seeking to promulgate a rule has three affirmative duties: (i) to "create a 'legislative record'" summarizing the evidence presented to it during the comment period; (ii) to provide a justification based on that evidence for the rule adopted, "including why the agency gave less weight or disregarded evidence to the contrary"; and (iii) to demonstrate that its justification is reasoned. *R.R. Comm'n v. Arco Oil & Gas Co.*, 876 S.W.2d 473, 491 (Tex. App.—Austin 1994, writ denied) (quoting Ron Beal, *Challenging the Factual Basis and Rationality of a Rule Under APTRA*, 45 Baylor L. Rev. 1, 40 (1993)).

Courts should review a challenge to an agency's reasoned justification under the "arbitrary and capricious" standard, without presuming that facts exist to support the agency's order. *Lambright v. Tex. Parks & Wildlife Dep't*, 157 S.W.3d 499, 504

55

(Tex. App.—Austin 2005, no pet.); *Reliant Energy*, 62 S.W.3d at 841. "A reviewing court must confine its search for a reasoned justification to the four corners of the order finally adopting the rule, and the agency must provide a reasoned justification for the rule as a whole, not clause by clause." *Lambright*, 157 S.W.3d at 504; *see Reliant Energy*, 62 S.W.3d at 840; *Arco*, 876 S.W.2d at 491. To satisfy the APA, the four corners of an agency's order must include "(1) a summary of the comments from interested persons; (2) a summary of the factual basis for the rule; and (3) the reasons why [the agency] disagreed with a party's comments."[14] *Lambright*, 157 S.W.3d at 504. Courts should ask whether the agency's explanations of the facts and policy concerns it relied on show that the agency considered all the relevant factors and engaged in reasoned decision-making. *Reliant Energy*, 62 S.W.3d at 841; *see Arco*, 876 S.W.2d at 491 ("courts insist upon an explanation of the facts and policy concerns relied upon by the agency, determine whether the agency has considered the relevant factors, and ensure that the agency has given the problem a 'hard look' and engaged in reasoned decision making" (quoting John J. Watkins & Debora S. Beck, *Judicial Review of Rulemaking Under the Texas Administrative Procedure and Texas Register Act*, 34 Baylor L. Rev. 1, 32-33 (1982))).

---

[14] The Comptroller seems to view the "four corners" rule as cutting in its favor, but that rule actually places the burden on the agency to ensure that the four corners of the order contain *all* of the information relied upon *and* the full reasoning employed.

An agency acts arbitrarily if it omits from its consideration a factor that the Legislature intended it to consider, includes an irrelevant factor in its consideration, or "reaches a completely unreasonable result after weighing only relevant factors." *Lambright*, 157 S.W.3d at 505; *Reliant Energy*, 62 S.W.3d at 841. Even an order that contains "the minimum components" "does not necessarily state a reasoned justification"—the order "must present the agency's justification in a relatively clear, precise, and logical fashion. Otherwise, even an order stated in terms that were vague, ambiguous, conclusory, or logically incomplete or inconsistent would be virtually unassailable." *Arco*, 876 S.W.2d at 492; *see Methodist Hosps.*, 798 S.W.2d at 659 (rejecting as "untenable" board's argument that its adoption of Rule after receiving comments and proposals amounted to sufficient "reply" to comments and holding that APA "requires in explicit terms that the Board's reasons for disagreeing with party submissions and proposals be stated in the order as part of the agency's 'reasoned justification' for its newly adopted rule").

Government Code Section 2001.033(a)(1)(C) requires that a state agency order finally adopting a rule must include, among other things, "the reasons why the agency disagrees with the party submissions and proposals." Tex. Gov't Code § 2001.003(a)(1)(C). Round Rock timely submitted a written comment in response to the 2024 Notice. Ex. RR-27.

That comment included, among other things, the two following submissions:

- If the Comptroller cannot accurately estimate how the rule amendments will impact the revenue of local governments or the public, then why is the Comptroller adopting such amendments at all? (Submission II), Ex. RR-27 at 2-4.

- The way the Comptroller can minimize adverse economic effects on small businesses is to apply the plain meaning of the Tax Code, which sources sales for retailers with a single place of business to that location. (Submission IV), Ex. RR-27 at 6-7.

The Comptroller makes the following argument with respect to Round Rock's Submission II:

> [T]he Comptroller substantially complied with the notice requirements of the APA. The City of Round Rock improperly framed the Comptroller's detailed and thorough explanation of each notice requirement of the APA as an inability to comply. *See* 49 Tex. Reg. 4808. The Comptroller gave reasons why the agency disagreed with Round Rock's notice comments.

Comptroller Brief at 48. The Comptroller, however, does not explain how any statement in the 2024 Order responds to Round Rock's question: Why is the Comptroller moving forward with the rule amendments with so much uncertainty? *See Reliant Energy,* 62 S.W.3d at 840 ("the four corners of the agency's final notice must present the agency's justification in a 'relatively clear, precise, and logical fashion'").

In addition, Round Rock explained the following in its Submission IV:

> [T]he burden the rule amendments impose on small businesses is not determining whether its single location is a place of business. Rather, the burden imposed on small businesses is the requirement to track how

58

an order is received, fulfilled, and delivered. Under Tax Code § 321.203(b), a retailer with a single place of business sources all its sales to that location. You cannot get a compliance burden that is lower than that. The best way the Comptroller can minimize adverse economic effects on small businesses, and all of Texas, is to apply the plain meaning of the Tax Code, which sources sales for retailers with a single place of business to that location.

Ex. RR-27 at 7. The Comptroller did not explain in the 2024 Order why a rule that sources sales for retailers with a single place of business to that location was not a preferable alternative that reduces compliance burdens for small businesses.

The Comptroller did not provide a substantive reply to two of Round Rock's objections raised during the rulemaking process. It, therefore, did not substantially comply with the reasoned justification requirement of the APA, as the trial court correctly determined.

## PRAYER

For the foregoing reasons, Round Rock respectfully prays that this Court affirm the trial court's judgment in full and grant all such other and further relief to which Round Rock may show itself justly entitled to receive.

Respectfully submitted,

/s/ Cindy Olson Bourland
**Cindy Olson Bourland**
State Bar No. 00790343
Bourland Law Firm, P.C.
P.O. Box 546
Round Rock, Texas 78680
Tel: (512) 477-0100
bourland@bourlandlaw.com

**Bryan J. Dotson**
State Bar No. 24072769
Chamberlain, Hrdlicka, White, Williams, &
        Aughtry, P.C.
112 E. Pecan Street, Suite 1450
San Antonio, Texas 78205
Tel: (210) 278-5844
bryan.dotson@chamberlainlaw.com

**Counsel for Cross-Appellee,**
**The City of Round Rock, Texas**

**CERTIFICATE OF COMPLIANCE**

I certify that the foregoing Brief of Cross-Appellee, City of Round Rock, Texas, was prepared using Microsoft Word 365 and that, according to its word-count function, the sections of the foregoing brief covered by Texas Rule of Appellate Procedure 9.4(i)(1) contain 14,122 words in 14-point font and footnotes in 12-point font. I further certify that the number of words within all images were counted by hand and total 143. Therefore, the combined words in the brief covered by Texas Rule of Appellate Procedure 9.4(i)(1) total 14,265.

/s/ Cindy Olson Bourland
CINDY OLSON BOURLAND

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing has been served on all counsel of record via electronic service on November 26, 2025.

/s/ Cindy Olson Bourland
CINDY OLSON BOURLAND

**Automated Certificate of eService**
This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Cindy Bourland on behalf of Cindy Bourland
Bar No. 790343
bourland@bourlandlaw.com
Envelope ID: 108514374
Filing Code Description: Brief Not Requesting Oral Argument
Filing Description: Brief of City of Round Rock, Cross-Appellee
Status as of 11/26/2025 4:41 PM CST

Associated Case Party: City of Coppell, Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Richard Phillips | 24032833 | Rich.Phillips@hklaw.com | 11/26/2025 4:18:35 PM | SENT |
| Reed Randel | 24075780 | Reed.Randel@hklaw.com | 11/26/2025 4:18:35 PM | SENT |
| Stephen Fink | 7013500 | Stephen.Fink@hklaw.com | 11/26/2025 4:18:35 PM | SENT |
| James Harris | 9065400 | jim.harris@hklaw.com | 11/26/2025 4:18:35 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Bryan Dotson | 24072769 | bryan.dotson@chamberlainlaw.com | 11/26/2025 4:18:35 PM | SENT |
| Cynthia Bourland | 790343 | bourland@bourlandlaw.com | 11/26/2025 4:18:35 PM | SENT |
| Brandon L.King | | brandon.king@hklaw.com | 11/26/2025 4:18:35 PM | SENT |

Associated Case Party: Glenn Hegar, in his official capacity as Texas Comptroller of Public Accounts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Ray Langenberg | 11911200 | ray.langenberg@cpa.texas.gov | 11/26/2025 4:18:35 PM | SENT |
| Kyle Counce | 24082862 | Kyle.Counce@oag.texas.gov | 11/26/2025 4:18:35 PM | SENT |